## JOSEPH WILKINS *vs.* JOHN THORNE.

*Corporation—Jurisdiction—Party to a Suit.*

A controversy between *bona fide* stockholders of a corporation on the one side, and those claiming to be stockholders, and the president and directors on the other, can only be determined by the Courts of the State by which the corporation was created. And in such controversy the corporation must be made a party.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before MILLER, STONE, ALVEY, IRVING, and RITCHIE, J., for the appellant, and submitted on brief for the appellee.

*Rufus W. Applegarth,* and *Stewart Brown,* for the appellant.

*John Henry Keene, Jr.*, for the appellee.

MILLER, J., delivered the opinion of the Court.

This appeal is from an order overruling a demurrer to, and granting the injunction against the appellant prayed for by, a bill filed by theappellee against the appellant, and certain so-called directors of a mining company, who are not named and are alleged to be unknown to the complainant.

The bill is filed against Wilkins, the president so-called of the "North State Copper and Gold Mining Company," a corporation which was incorporated in 1859 under the laws of North Carolina, and which it is alleged is doing business in the City of Baltimore. The averments are in substance that the original incorporators have long since died; that for a number of years after 1859 there were regular proceedings had, and directors and other officers were duly elected until about the year 1866; that in September, 1865, complainant became the purchaser of twenty-one hundred and one full paid shares of the capital stock of this company, for the consideration of $10,000, which was paid therefor; that at the time of this purchase Wilkins was acting as president of the company, as appears by a copy of the certificate for the stock which is filed with the bill and signed by Wilkins as president; that shortly after this purchase complainant had an interview with Wilkins in which he promised to give all information respecting the movements, doings and value of the stock, but no such information was ever afforded him by Wilkins or any one else, and he could never obtain the charter or by-laws of the company; that no dividend or meeting of the stockholders ever took place to his knowledge, and for several years he had no notice of any such meetings; that the corporation went out of existence, and from 1867 or 1868 no meetings were held, no board of directors were elected, and the corporation, like many

similar companies at that period, went into gradual decay and abandonment.

The bill then charges that Wilkins has fraudulently and falsely stated that all the original books, records, and by-laws of the company had been destroyed, and that up to about the 1st of October, 1881, no legal proceedings, nor any proceedings whatever, under or in pursuance of any by-law, rule, resolution or otherwise of said charter, under the laws either of Maryland or North Carolina, were in fact had in respect to this corporation, or concerning its affairs; that its property and effects were abandoned as worthless by Wilkins and others; that no care, authority or act of ownership was ever exercised over its property by any of the supposed directors, nor by Wilkins, nor by any one acting in authority under him from 1867 or 1868, until about the 1st of October, 1881, and during all this period complainant never heard of or from Wilkins, and feared that his investment in this stock was lost; that about the 1st of October, 1881, Wilkins ascertained that the property of the company was of value, and that its real estate in North Carolina was in possession of persons unknown to complainant under color of legal right; that thereupon Wilkins, and others to complainant unknown, fraudulently contriving and intending to get possession of this property, and divide the same among themselves to the exclusion of the lawful owners of the stock, assembled in Baltimore, in some place unknown, and proceeded to take steps to re-organize the company, intending thereby to cheat and defraud complainant and the other lawful holders of the stock out of their property by means of certain pretended by-laws, rules and regulations; that certain persons to complainant unknown, combining and confederating with Wilkins and with divers other persons at present unknown, but whose names when discovered he prays leave to insert in the bill with apt words to charge them as defendants thereto, did at this unlawful meeting pretend to be

holders of certain shares of stock of the company, and passed certain by-laws as if they were *bona fide* holders thereof, and were proceeding in due course of law, and in fact assumed and now pretend to be the president and directors of the company; that they did in fact pass resolutions, and made a small assessment of their pretended shares of stock, and with the money so raised have purchased from the trespassers on the real property of the company their pretended claim of right thereto, and have caused such trespassers to surrender to them as the lawful representatives of the company their supposed rights to such property, and that Wilkins and his said confederates are now in actual possession thereof and of all the franchises of the company, pretending to be owners thereof, and that he and they are now offering for sale and daily effecting sales of stock, pretending it to be the valid stock of the company; that complainant has no means of ascertaining what number of shares have been sold or issued, nor in pursuance of what authority, except that of Wilkins and his confederates, and he charges that Wilkins has refused to allow any of the stockholders who have not paid the assessments levied as aforesaid without lawful authority, to have any lot, share, recognition or authority, in the matter of the corporation, although their stock is full paid up stock and they are *bona fide* holders thereof, and he charges that the stock has a marketable value and is now sold, and that the company has no valid organization whatever; that none of the things done by Wilkins in the fall of 1881 were known to complainant until a few days since, when he saw Wilkins, who informed him that his stock had been forfeited because the assessments (of which he had no notice whatever) had not been paid; whereupon he, not then knowing that these proceedings of Wilkins and others were without any warrant of law, and having discovered from others that certain persons, to him unknown, had agreed that five cents per share should be

paid by those holding the stock, and not then knowing that the proceedings and orders so promulgated were the result of a fraudulent and concerted agreement between Wilkins and others, tendered to Wilkins and his secretary the amount thus assessed upon his stock, but they refused to accept it, alleging that his stock had become forfeited.

The bill then prays for an injunction restraining Wilkins and others acting under his authority, or in concert with him, from intermeddling with the property, stocks, or affairs of the company; that the corporation may be dissolved and its affairs wound up and its assets distributed under the order of this Court; that a receiver be appointed to take charge of its affairs, and to take and hold possession of its property for the benefit of complainant and such other *bona fide* stockholders as may come in and contribute to the expenses of this suit, on whose behalf as well as his own this bill is filed; that such stock as may have been issued under the supposed authority of Wilkins and others be declared void and cancelled by the order of this Court; that all by-laws framed without warrant of law be declared void; that if it shall be discovered that any money has been expended by lawful authority for the purpose of defraying any expenses relating to the property of the corporation, that the complainant shall be allowed to contribute his proportion, and that such others as shall come into this suit shall be likewise allowed so to do; complainant professing himself at all times ready so to do; and for general relief.

The prayer for *subpœna* to answer, is against Wilkins, and "the certain so-called directors of the said corporation," (not naming them,) and the special prayer for an injunction is that an injunction be issued directed to "Joseph Wilkins, the so-called president, and the directors so-called of the said corporation, enjoining and strictly prohibiting him and them, and each of them, his and their servants, agents and attorneys, from intermeddling or in any wise

interfering with the property or affairs of the said corporation, from selling or disposing of the stock, or offering to sell the same, from issuing any certificate or certificates purporting to be the certificates of the said corporation stock, or in any wise taking any part, or doing any act respecting the corporation directly or indirectly."

We have thus stated at greater length than usual, the material allegations of this bill in order that its scope and purpose may be clearly seen. As far as our comprehension goes, it makes a case of a contest between the complainant and other *bona fide* stockholders of the corporation on the one side, and those claiming to be stockholders and president and directors on the other. This is clearly a controversy relating to the *internal management* of the corporation, and the validity of the acts of those who claim to be, and indeed are admitted to be *de facto*, its president, directors and stockholders. Now if this were a Maryland corporation there could be no question as to the jurisdiction of a Maryland Court over the subject, but such is not the case. This corporation was created under the laws of another State, and it seems to us that all such controversies must be determined by the Courts of the State by which the corporation was created. Our researches have enabled us to find no case in which the Courts of another State have ever assumed jurisdiction over a controversy like this, and we think none can be found. Indeed, it would be a strange anomaly in our system of jurisprudence if the Courts of one State could be vested with the power to dissolve a corporation created by another, and assume control over its property for the purpose of distributing it among those claiming to be its stockholders.

But assuming that a Maryland Court has jurisdiction in this case for any of the purposes stated in this bill, we think it clear that the corporation itself is an essential party to the suit. *Booth, et al. vs. Robinson, et al.*, 55

*Md.,* 439 ; *Robinson vs. Smith,* 3 *Paige,* 222 ; *Davenport vs. Dows,* 18 *Wallace,* 626 ; *Greaves vs. Gough,* 69 *N. Y. Rep.,* 167 ; *Charleston Ins. & Trust Co. vs. Sebsing,* 5 *Rich. Eq. Rep.,* 342. It is true the bill in one part of it alleges that the corporation went out of existence and fell into gradual abandonment and decay, but in another part it concedes that it was never legally and formally dissolved, and one of the most important prayers for relief is that it may be dissolved and a receiver appointed to take charge of its property. In fact all the relief prayed proceeds upon the assumption that the corporation still legally exists, and we see nothing in the case to exempt the complainant from the obligation of the general rule clearly established by all the authorities that the corporation must be made a party to a controversy like the present.

This is all that need be said to dispose of the case, and it follows that the order appealed from must be reversed, and the bill dismissed.

*Order reversed,*
*and bill dismissed.*

(Decided 19th June, 1883.)