## LEVI Z. CONDON ET AL. vs. THE MUTUAL RESERVE FUND LIFE ASSOCIATION.

*Jurisdiction Over Foreign Corporation Doing Business in this State —Regulating Internal Management of Corporation—Mutual Life Insurance Company—Fraudulent and Illegal Assessments—Forfeiture of Policy—Receivers.*

The Courts of this State have no jurisdiction to inquire into and regulate the internal management of a foreign corporation doing business in this State.

Code, Article 23, section 124, providing that every foreign insurance company doing business in this State shall appoint an agent here upon whom process can be served, does not confer upon the Courts of this State jurisdiction to regulate the internal government of such corporation.

A policy-holder in a life insurance company operating on the mutual assessment plan is an insurer of others as well as insured himself. An action on the policy to recover a loss insured against would be within the jurisdiction of the Courts of this State although the company be foreign, and in such case the policy would be construed and the rights of the plaintiff ascertained. But a suit to determine whether certain assessments in a foreign insurance company were fraudently and illegally made and to enjoin the forfeiture of a policy for non-payment thereof, involves an inquiry into and the regulation of the internal management of a foreign corporation, and is not within the jurisdiction of the Courts of this State.

The constitution and by-laws of a mutual assessment insurance company form part of the contract of insurance, whether mentioned or not; and the policy is to be construed in connection with them.

The assessments paid by a member of·such a company to meet death losses, are not assets of the company, but are collected by it for the benefit of those entitled.

Plaintiff, a resident of this State, was a member of a mutual assessment life insurance company created by another State, and doing business here.   The policy provided for certain regular assessments, and also that if the death fund should be insufficient to meet existing claims, then assessments might be made at such rates as should be established by the board of directors.   Provision was also made for the issue of a bond, for his proportion of the reserve fund to each member after a certain time, which should be available for the payment of future assessments.   It was stipulated that the contract should be construed according to the constitution and by-laws of the company and the law of the State of its domicile.   Plaintiff filed a bill alleging that his assessments had been fraudulently and illegally increased in amount by the directors of the company for the purpose of forcing him to allow his policy to lapse, and that the bond issued to him was for less than the amount that would be his share of the reserve fund upon a true accounting.   The bill asked for an injunction restraining the forfeiture of plaintiff's policy for non-payment of the extra assessments, for an adjudication that they were fraudulent and void, and a determination as to the power of the company to levy assessments ; for an account of the assets and liabilities of the company and for a receiver. It was also alleged that if the company had the power to make the extra assessments, the plaintiff had been mistaken as to this matter when his policy was issued, and it was asked that the payments made by him should be refunded.   Upon demurrer, *Held,*

1st. That the question whether the condition of the company's death fund required the extra assessments to be made, or whether they were unnecessary and fraudulent, could not be determined until the condition of the death fund, and the claims upon it, and the whole management of the association as to its liabilities and assets, should be investigated, and that since this involved an inquiry into, and an attempt to regulate the internal affairs of a foreign corporation, the Courts of this State have no jurisdiction.

2nd. That since the Court had no jurisdiction over the principal subject-matter of the bill, it had no power to appoint a receiver upon the mere allegation of the company's insolvency.

3rd. That the Court would not construe plaintiff's rights under his certificate of membership because that alone was set out in the bill while his rights under it depend also upon his application, and the constitution and by-laws of the company which are not before the Court.

4th. That the sums paid in by the plaintiff were paid by him as insurer to meet losses and that he had no standing to ask to have the same

refunded merely because he did not know that the company had the right under the contract to increase the assessments mentioned in his policy.

Appeal from a decree of the Circuit Court of Baltimore City (WICKES, J.), sustaining demurrers to the bills of complaint in this case and dismissing the same.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, ROBERTS, PEARCE and SCHMUCKER, JJ.

*John Prentiss Poe* and *Edgar H. Gans* (with whom was *Alonzo M. Hurlock*, on the brief), for the appellants.

The defendant says that the acts of the defendant corporation do affect the complainant solely in his capacity as a member of the corporation. We deny this statement, and contend that the action of the defendant affects the complainant, not solely in his capacity as a member of the corporation, but in his capacity as a contractor, as an insured person under a contract of insurance.

Just here is the point about which the whole controversy hinges. (*A.*) . It is true, as alleged by the defendant, that the complainant, by his policy of insurance or certificate of membership, becomes a member of the corporation. But the fallacy of the argument of the defendant, which runs through his whole contention, is that this is the only relationship created by the policy of insurance. If this were the only relationship created by the contract, then it would follow, that any action of the defendant injuriously affecting the complainant would of necessity affect him solely in his capacity as a member of the corporation. (*B.*) But the policy issued to the complainant does create another and distinct relationship between the complainant and the defendant, in respect to which the complainant stands before the Court with all the rights of a stranger to the corporation.

This is settled by all the authorities. " The rights of a member of a mutual benefit society are two-fold—those which arise out of the contract of membership, and those which arise under his contract for benefit and insurance. In

seeking to determine the rights of a member of such a society, it is necessary, therefore, to determine under which contract they arise.   The corporate rights of a member of a mutual benefit society are subject to the control of the corporation ; but his rights as an insured person rest upon his contract with the society." *Niblack Benefit Societies*, sec. 6 ; *Rosenberger* v. *Washington Mutual*, 87 Pa. St. 207.  "In a contract of mutual benefit insurance the member acts for himself and not as a part of the society ; his rights rest upon his contract of insurance, not upon his contract of membership in the society.  A corporator in a mutual benefit society, like a stranger, may enter into a contract of insurance with it, and his rights under the contract will be as fully protected as those of a stranger. " *Niblack*, sec. 136 ; *Morrison* v. *Ins. Co.*, 59 Wis. 162 ; *Gundlach* v. *Association*, 49 How. Pr. 190 ; *Pulford* v. *Fire Department*, 31 Mich. 458 ; *Becker* v. *Farmers' Mutual*, 48 Mich. 610 ; *Hysinger* v. *Supreme Lodge*, 42 Mo. App. 627 ; *Holland* v. *Taylor*, 111 Ind. 121 ; *Association* v. *Warner*, 24 Ill. App. 357 ; *Richmond* v. *Johnson*, 28 Minn. 449 ; *Grand Lodge* v. *Sater*, 44 Mo. App. 445.   A member of a mutual company is at once "insurer and insured." *May, Insurance*, sec. 548.   " The relations between the company and the policy-holders are those of contractors, the contract being the policy." *Hencken* v. *U. S. Life Ins. Co.*, 11 Daly, 289.

(*C.*) It thus appears that the complainant has a dual relation with the company.   He is a member with corporate rights and corporate relations ; he is also *an insured person* under his contract of insurance.   Actions of the corporation, which affect him " as an insured person under his contract of insurance," do not affect him " solely in his capacity as a member of the corporation," and therefore do not amount to the *internal management of the affairs* of the corporation.

(*D.*) The action complained of in the bill do affect him in his capacity *as an insured person*.   It is alleged, on the theory that a valid contract exists, that the defendant is fraudulently and unlawfully trying to cause the policy to lapse,

and to confiscate the amount already paid in, by fraudulently and illegally, and in gross violation of the contract levying assessments so large that it is practically impossible for the complainant to pay them ; and it is alleged, in the alternative, on the theory that there was no meeting of minds, that the complainant was induced to believe by the defendant that only a certain assessment was to be levied, which entitles him now to have the supposed contract cancelled and his money refunded.   In the former case his contract of insurance is violated, and he is hurt as an insured person ; in the latter case he has a money claim, which does not differ in its characteristics from any money claim which a stranger might have against the corporation.   From these observations it seems clear to us that the rule in *Fields'* *case*, which is cited as conclusive by the appellee, has really no application to this case.

The appellee in his general argument, then leaves the rule in *Fields'* *case* and argues that as whatever money is raised by the defendant corporation is raised by assessment, the time, manner and amount of assessments must be left to the board of directors of the association and that anything which interferes with this, interferes with the internal affairs of the association.   But this argument proves too much.   The Code provides that suits may be brought in any Court of this State against any corporation not incorporated in this State, but exercises franchises therein, by a resident of this State for any cause of action.   Code 23, sec. 297.   Now any suit whatever by a resident of Maryland against this corporation, if successful, would cause the directors to make some changes in their assessments, if the amount of the recovery were larger than the existing funds of the company available for payment.   The argument of the appellee, therefore, to be successful on this ground, must go to the length of contending that no suit can be brought against this corporation by a resident of Maryland in a Maryland Court. Suppose the defendant, arbitrarily and without any claim of justification, should pass a resolution simply forfeiting the

policy of every policy-holder living in Maryland over 60 years of age, would these Maryland citizens have no redress in a Maryland Court? Suppose a Maryland policy-holder in this company had sold the company $1,000 worth of paper for its use, would he be prevented from suing on this claim because he was also a member of the corporation? It seems to us, that if the contention of the appellee be true, these questions must be answered in the affirmative.

It was argued below that by a New York statute passed in 1890, ch. 400, no injunction could be issued against a benefit insurance company, and a receiver appointed over it, but on the application of the Attorney-General of New York. We reply: 1. A foreign statute is a fact which must be proven; and as this is an argument on demurrer, and as no such statute is averred in the bill, it is not before the Court. Counsel cannot get a foreign act of legislation before the Court by simply printing it in their brief. 2. Even if the Act were before the Court, and applicable, it was passed in 1890, while the contract in this case was made long before that time. It would be an invalid law as to the existing contract, as it deprives him of all remedy. 3. Even if the Act were before the Court it would not be applicable, as the question of remedy is always determined by the *lex fori.* Dicey, *Conflict of Laws,* Rule 188; *Trasher* v. *Everhart,* 3 G. & J. 234; *Dakin* v. *Pomeroy,* 9 G. 1; *De Sobry* v. *Dt Laistre,* 2 H. & J. 191.

*Wm. Pinkney Whyte* and *Bernard Carter* (with whom was *John M. Carter* on the brief), for the appellee.

An examination of all of the claims and rights set up and asserted in *all of the allegations of the bills of complaint,* shows that all of said rights as they are alleged to exist, are claimed to belong to the plaintiffs by *virtue only* of their membership in said Mutual Association, the defendant in this case, and to grow out of said membership, and to be dependent upon the true interpretation of the relative rights of members of said association, and of the rights and pow-

ers of said association under the certificates of membership issued by it, and under its constitution and by-laws ; and *the whole subject-matter of said bills of complaint,* whether looking to the allegations of the bill, or the relief sought, is the rights of the plaintiffs and other members of said Mutual Association, *as members of said Mutual Association,* and the actions of the said defendant, complained of in said bill, " *affect the plaintiffs solely* in their capacity as members of said Mutual Association," the defendant corporation, a corporation of the State of New York, and not a corporation of the State of Maryland.

The taking by this Court of jurisdiction of the subject-matter of said bills of complaint, and the making the inquiries and investigation, and doing the things which it is asked to do by the said bills of complaint, *necessarily involves an interference with the internal management of the defendant corporation.*

That this Court has no power to assume such jurisdiction is settled by *North State Copper Co.* v. *Field,* 64 Md. 151 ; *Wilkins* v. *Thorne,* 60 Md. 252.   The same principles have been acted on in other cases which proceed upon two grounds : 1. The general impropriety of the Courts of one State attempting to settle the internal affairs of a corporation created by, and domiciled within another State.   2. The inability of a Court in one State to do full justice in such a case, for want of proper parties.   *Thompson on Corporations,* sec. 7904 ; *Smith* v. *Mutual Life Insurance Co.,* 14 Allen (Mass.) 336 ; *Kansas Construction Company* v. *Topeka R. R. Co.,* 135 Mass. 34 ; *Madden* v. *Electric Light Co.,* 181 Pa. 617 ; *Stafford* v. *Am. Mills Co.,* 13 R. Island, 310 ; *Fisher* v. *Charter Oak I. Co.,* 20 Jones and Spencer (N. Y. Sup. Ct.) 188.

As this defendant is chartered by the State of New York, and only by it, the legal existence, the home, the domicile, the *habitat,* the residence, the citizenship, of the corporation, can only be in the State of New York, although it may do business in other States whose laws permit it.   *Bank of*

*Augusta* v. *Earle*, 13 Peters, 519; *Shaw* v. *Quincy Mining Co.*, 145 U. S. 450.   In the year 1890, chapter 400 of the Sessions Laws of the State of New York of that year, was passed; it is entitled "An Act in relation to life and casualty insurance companies, associations and societies organized under the laws of this State."   "No order, judgment or decree providing for an accounting, or enjoining or interfering with the prosecution of the business of any life or casualty insurance company, association or society in this State, or appointing a temporary or permanent receiver thereof, shall be made or granted otherwise than upon the application of the Attorney-General, on his own motion, or after his approval of a request in writing of the Superintendent of the Insurance Department, except in an action by a judgment creditor or in proceedings supplementary to execution."

The validity of this statute was upheld in *Swan* v. *Mut. Reserve As'n.*, 155 N. Y. 9.

The said statute of the State of New York, having been thus adjudged to be a valid exercise of legislative power, and relating to all life insurance associations, and therefore to the defendant, the provisions of said statute are to be treated as an amendment to and a part of the charter of the defendant.   *Relfe* v. *Rundle*, 103 U. S. 222; *Bockover* v. *Life A. of Am.*, 77 Va. 85.

The defendant in doing business in Maryland, and in accepting the plaintiffs as members of said Association, comes into Maryland just as it has been created and regulated by the statutes of New York.   It carries its charter wherever it goes, for that is the law of its existence, and every person who deals with it anywhere is bound to take notice of the provisions which have been made in its charter for the management and control of its affairs.   *Relfe* v. *Rundle*, 103 U. S. 225, 226; *Bockover* v. *Life A. of Am* , 77 Va. 86.

Therefore as the statute of the State of New York, the place of the creation and home of the defendant, which statute operates as an amendment to, and is a part of the

charter of the defendant, requires that any proceedings against the defendant seeking the relief sought by the bills of complaint in this case, shall be brought by the Attorney-General of New York, and by him alone; and as this part of the charter is operative and binding upon all members of said association, no matter where their residence is ; and as the legislative control and direction that may be exercised over the defendant, by the State of New York, which created it and gave it the powers it possesses, must be recognized and submitted to by its members in Maryland and elsewhere, it follows that the pending bills of complaint, which are filed by members of said association, are filed in disregard of the requirements of the charter of the said defendant, which charter is a law to its members, controlling their action absolutely, irrespective of, and notwithstanding the absence of any express agreement on their part to be bound by the said provisions of said charter.

It is well settled that members of a Mutual Assessment Insurance Company are bound by the statutes of the State where it was organized. They are deemed as much part of the contract of insurance as though they were written into the certificate itself. The citizenship of the member is of no importance. *Stohr* v. *Mutual Fund*, 82 Cal. 557; *Conductor's Asso.* v. *Robinson*, 147 Ill. 138; *Joyce on Ins.*, sec. 194.

No decree which the Court could pass, ascertaining the rights of the plaintiffs, in respect of assessments for the death fund, or in respect of the reserve fund, which decrees could only be passed after a thorough and complete ascertainment of the internal affairs and management of the defendant, would be respected by the Courts in the State of New York; because not being within the scope of the jurisdiction of the Maryland Court, a decree in conformity with the prayers of the bill would not be entiled to " full faith and credit " in the State of New York. *Thompson* v. *Whitman*, 18 Wall. 457.

McSHERRY, C. J., delivered the opinion of the Court.

The questions to be decided on this appeal arise on a demurrer interposed by the appellee to a bill in equity filed by the appellant in the Circuit Court of Baltimore City. The appellant is a resident of Maryland. The appellee is a corporation created under the laws of the State of New York and having its principal office there, though transacting business in Maryland. It is a mutual insurance company formed on and conducting the co-operative, or assessment plan. The appellant is a member of the body corporate and holds one of its certificates of membership issued in eighteen hundred and eighty-four. By this certificate it is provided that " in consideration of the application for this certificate of membership "—the application being expressly made a part of the contract—and in consideration of the payment of certain dues and designated mortuary assessments falling due in February, April, June, August, October and December of each year, " or from such other periods as the board of directors may from time to time determine," the Mutual Reserve Association " does hereby receive Levi Z. Condon   *   *   *   as a member of said association." It is then stipulated that the association will upon the death of Condon, during the continuance of the certificate and upon certain conditions, pay to his legal representatives the sum of ten thousand dollars " from the death fund of the association at the time of said death, or from any moneys that shall be realized to the said fund from the next assessment to be made." The certificate further declares : " If at such date as the board of directors of the association may from time to time fix or determine for making an assessment, the death fund is insufficient to meet existing claims by death, an assessment shall then be made upon every member whose certificate is in force at the date of the last death assessed for, *and said assessment shall be made at such rates*, according to the age of each member, *as may be established by the said board of directors*, and the net amount received from such assessment (less twenty-five per cent. to

be set apart for the reserve fund) shall go into the death fund." It is also provided that "the net earnings of the association, together with the twenty-five per cent. of the net receipts from each assessment shall constitute a reserve fund;" and that "after the expiration of each period of five years, during the continuance of this certificate of membership, a bond will be issued　*　*　*　for an equitable proportion of the reserve fund, and the principal of said bond shall be available ten years from its date towards paying future dues and assessments under this certificate　*　*." It is likewise declared that the contract shall be subject to all the provisions and stipulations contained in the constitution and by-laws of the association, "with the amendments made or that may hereafter be made thereto." And it is agreed that "the entire contract contained in this certificate and said application taken together, shall be governed by, snbject to, and construed only according to the constitution, by-laws and regulations of said association, and the laws of the State of New York, the place of this contract being expressly agreed to be the home office of said association in the city of New York." Upon the back of the certificate there is printed a "table of rates" containing among other things a statement, that "the basis of the assessment rate for each member according to the age taken at the nearest birthday on each $1,000 shall be as follows," and then the various ages from twenty-five to sixty-five are set forth and the several sums payable at the respective ages are placed opposite. Condon's age upon entering the association was fifty-five, and the amount designated as the assessment upon each one thousand dollars at that age is three dollars and twenty-five cents. The appellant paid for some years six assessments annually, each of which amounted to thirty-two dollars and fifty cents. Subsequently the assessment was increased to forty-eight dollars and fifty-five cents, then raised to forty-nine dollars and ten cents, and later on to seventy-five dollars and thirty cents. These sums were paid by Condon "with extreme reluctance." On February the

first, eighteen hundred and ninety-eight, mortuary call number ninety-six was issued and by it the appellant was required to pay on or before March the third the sum of one hundred and thirty dollars.    He alleges that these assessments were enormously in excess of what he understood to be the meaning and effect of his contract with the appellee at the time he entered into it.    By a written agreement the time for the payment of the ninety-sixth assessment was extended, first, for thirty days from March the third, and then for thirty days from April the second.  On the twenty-ninth of April, Condon filed a bill in equity against the appellee in the Circuit Court of Baltimore City ; and on June the seventeenth he filed an amended and supplemental bill. These are the bills now before us.

The bill, which was filed by Condon for himself and in behalf of others similarly situated who might come in and make themselves parties to the proceedings, after setting forth the facts already alluded to proceeds to charge that the levying of the assessments in excess of three dollars and twenty-five cents per one thousand dollars of insurance and in excess of six *per annum* is a gross violation by the appellee of its contract with the appellant and is both fraudulent and illegal : That the validity of this action cannot be maintained upon the ground that by a strained interpretation of some of the conditions of the policy the levying of assessments is remitted to the discretion of the officers, because the discretion referred to means the honest discretion of the corporation and its officers : That these assessments were not levied *bona fide* in the honest exercise of any discretion vested in the corporation or its officers, but were levied with the dishonest and fraudulent purpose of forcing the appellant and others situated as he is to allow their policies to lapse by a failure to pay illegal, ruinous and fraudulent assessments.

The bill further charges that these increased assessments cannot be defended by the suggestion that the same are " to any extent " needed in order to enable the corporation

to meet its death claims, because if the corporation is in the prosperous financial condition represented in its circulars, the levying of such assessments is a wanton abuse of the power it possesses and " plainly proves " that the same are illegal, fraudulent and *ultra vires.* The bill then sets forth clauses two and three of the policy. It is under these clauses that a reserve fund is created out of the net earnings plus twenty-five per cent. of the net receipts from each assessment. By these clauses it is further provided that after five years a membership bond is to be issued to the policy-holder for an equitable proportion of this reserve fund; and this bond is made available after the expiration of ten years for the payment of future dues. The bill charges that the amount of the bonds issued to the appellant is greatly less than, according to the face of his policy, he was entitled to—that, in fact, the apportionment made was fraudulent—and that upon a *true accounting* it will be found that he is entitled to sums very much greater than those allowed him in the two bonds which had been issued to him. The bill also charges that the corporation is insolvent. The relief prayed is as follows : First. For a subpœna. Second. That an injunction may be issued restraining the corporation from forfeiting the appellant's policy for the nonpayment of mortuary call number ninety-six, " and adjudging that the said assessment is fraudulent and void." Third. That in the event of the policy being construed as conferring the right to make the assesssment complained of, the policy may " be declared to have been obtained under such circumstances as demonstrated that there was no real meeting of minds" and that no contract was in fact executed; and therefore, that the corporation may be decreed to refund to the appellant all the payments made by him to it from the beginning. Fourth. That if the Court shall find that a binding contract was made, then, that the contract " *as set out in said policy,*" in connection with the constitution and by-laws of the corporation, may be interpreted and the true meaning and effect thereof determined, and that the *power*

of the corporation," in respect of the levying of assessments, may be settled and adjudicated. Fifth. That the corporation may be required to give a full and particular statement of its assets and liabilities. Sixth. That a receiver may be appointed to take charge of the assets within the jurisdiction of the Court and to administer them under the direction of the Court. Seventh. And for general relief. Other persons holding like policies became parties plaintiff. The defendant demurred to the bill and the amended bill and assigned four grounds. The first, second and third allege that the application for membership and the constitution and by-laws of the association, forming parts of the contract of insurance, are not exhibited with the bill and that it is, therefore, impossible for the Court to correctly interpret the contract. The fourth ground is in these words : "For that it appears by the bill of complaint in this case, that the acts complained of on the part of the defendant affect the plaintiffs solely in their capacity as members of the said association, and that the said action relates altogether to the management of the internal affairs of the said association which, as appears by the said bill of complaint, is not a corporation of the State of Maryland, but is a corporation of the State of New York, and therefore this Court has no jurisdiction of the subject-matter of the said bill of complaint."

The amended and supplemental bill re affirmed all the allegations of the original bill, and prayed in addition that a further assessment maturing on July the first be declared illegal and that an injunction be issued prohibiting the forfeiture of the policies because of its non-payment. The demurrer distinctly challenges the Court's jurisdiction to entertain the bill and to grant the relief sought. This issue of law thus raised, we now proceed to consider.

By *Sec. 124, Art. 23* of the Code, it is provided that before a foreign insurance company can transact business in Maryland, it shall, amongst other things, file with the Insurance Commissioner of this State, " a power of attorney

appointing a citizen of this State, resident within this State, the agent or attorney for the company, upon whom process of law can be served; there must also be filed with the Insurance Commissioner, a certified copy of the vote or resolution of the directors appointing such attorney, which appointment shall continue until another attorney be substituted. And said writing or power of attorney shall stipulate and agree, on the part of the company making the same, that any lawful process against said company, which is served on said agent, shall be of the same legal force and validity as if served on such company or association within this State; and also, that in case of the death or absence of the attorney so appointed, service of process may be made upon the Insurance Commissioner of this State; and such power of attorney cannot be revoked or modified (except that a new one may be substituted) so long as any policy or liability remains outstanding against such company in this State. The term process, used above, shall be held and deemed to include any writ, summons or order, whereby any action, suit or proceeding shall be commenced, or which shall be issued in or upon any action, suit or proceedings, by any Court, officer or magistrate  *   *   *   *."

Broad and comprehensive as this statute is, it obviously does not confer unlimited jurisdiction on Maryland Courts over foreign corporations. The language of an enactment does not always, or necessarily, measure its scope, or mark the limits of its action. And so, on the other hand, it is equally true, that things apparently within its words may be actually beyond its operation. If they are, it is not to be assumed that the Legislature intended to include them; and if there be no intent to include them they are outside of its purview. That which the Legislature has no power to authorize a Maryland Court to do, that is, to exercise extra-territorial jurisdiction, will not be held as included within the jurisdiction really given, even though the latter may be conferred in such general terms as to apparently embrace the former within the letter of the statute.

A policy-holder in a mutual insurance association stands in a two-fold relation towards the company. He is a policy-holder and he is a member. Growing out of this, as well as altogether apart from it, there may be a distinct relation of creditor, but with this latter we are not now concerned. He is alike insurer and insured, but in both capacities he is a member ; and it is solely because he is a member that he occupies either of these positions. His liabilities as insurer and his rights as insured depend wholly upon the obliga-tions·and the conditions of his membership. Those obliga-tions and conditions are evidenced by the constitution and the by-laws of the association and by his application for, and his certificate of membership, and by the law of the place of the contract. Apart from these there is nothing by which his duties and his rights as a member are to be determined. Rights as an insured he undoubtedly has. Those rights may be unlawfully invaded. If invaded, he is not without redress when he seeks relief in the forum having jurisdiction over the parties and the subject-matter. The mere fact that he is a member of the corporation does not preclude him from asserting against the corporation any right arising out of his contract ; but the character of the remedy invoked may measure the limits of the jurisdiction of the tribunal appealed to, when the domicile of the cor-poration is considered. It is, therefore, entirely possible that a state of facts which would authorize a Court in the exercise of its visitorial power to inquire into the validity of acts affecting the rights of a policy-holder, when done by a corporation located within the jurisdiction of the Court, would, as respects a foreign corporation, be wholly insuffi-cient to confer upon the same Court jurisdiction to act at all. Thus in *Rosenberger et al.* v. *Wash. Mut. Ins. Co.*, 87 Pa. St. 207, a *domestic* fire insurance company was sued for the amount claimed to be payable on a policy against loss by fire. The company was a mutual association. An assessment upon all the policy-holders had been levied some time prior to the loss, but it was alleged by the plaintiffs to

be excessive and therefore illegal and they refused to pay it.   When the loss insured against by the plaintiffs' policy occurred, the company insisted that the policy had been annulled because of the non-payment of the assessment. Suit was brought to recover on the policy, and it was held that the question as to whether the assessment was excessive ought to have been left to the jury.   Speaking for the Court JUDGE TRUNKY said : " By the terms of the charter the plaintiffs submitted themselves to the acts of the managers as representatives of all the members.   They were bound by the assessment unless they can show fraud or gross mistake."   The members " are, as members, subject to liabilities and entitled to privileges.   A member may participate in its benefits, is presumed to know its rules and regulations, its books are evidence against him and he shall bear his proportion of burdens.   His corporate rights may be subject to the control of the corporation, but his rights as a party insured rest on the contract.   Assurer and assured alike are bound by the charter—neither can do what it does not authorize."   The company was located within the jurisdiction of the Court, was subject to its visitorial power, and it was held, in these circumstances, that evidence tending to show fraud in the levying of the assessment was competent, because if the assessment was, in fact, fraudulent, it was illegal, and if illegal its non-payment furnished no ground for declaring the policy forfeited.   But we have no such state of facts to deal with in the pending case.   This litigation was not instituted to recover *on* the policy a sum payable under it for a loss actually sustained.   Its object, as will be shown later on, is to regulate by a decree of the Circuit Court of Baltimore City, the management, the conduct and the internal government of a foreign corporation.   And the question is : Does the statute, *Sec. 124 of Art. 23* of the Code, already cited, include such a proceeding, or confer jurisdiction to entertain such a bill as we have now before us ?   This question must be answered in the negative, and it must be so answered both upon principle and according to precedent.

If we turn for a moment to *Secs. 295 and 297* of *Art. 23* of the Code, it will be found that provision is there made in terms quite as broad as, if not broader than, those used in *Sec. 124,* for subjecting to suits in this State all corporations not chartered by the laws of Maryland.   Such corporations transacting business in this State are deemed to hold and exercise franchises within the State and are made liable to suit "on any dealings or transactions" had in the State. Such suits may be brought in any Court of the State or before a Justice of the Peace "by a resident of this State for any cause of action," and by a non-resident, when the cause of action has arisen or the subject of the action shall be situated in this State.   The scope of these provisions has been defined by this Court.   In *North State Copper and Gold Mining Co.* v. *Field*, 64 Md. 151, it appeared that the appellee was a citizen of Maryland, and the appellant was a corporation created by the laws of North Carolina.   The proceeding was an application for a *mandamus*.   Field claimed to be a stockholder in the North State Company.   He alleged that the directors of the company had made an illegal and invalid assessment upon each stockholder and had then forfeited his stock for the non-payment of that assessment.   He sought to be reinstated as a stockholder.   After quoting the sections of the *Act of 1868, ch. 471*, which are incorporated in the sections of the Code just above alluded to, this Court said : "The object of our statute, and of similar statutes passed by other States, is to provide for the collection of debts due from foreign corporations to our own citizens, and to enforce contracts made here by foreign corporations through its agents, and to protect our citizens from frauds or wrongs, whether the wrongdoer be foreign or domestic.   But it was not the intent of our statute to give our Courts jurisdiction over the *internal* affairs of a foreign corporation.   Our Courts possess no visitorial power over them, and can enforce no forfeiture of charter for violation of law, or removal of officers for misconduct ; nor can they exercise authority over the corporate functions, the

by-laws, nor the relations between the corporation and its members, arising out of, and depending upon, the law of its creation.   These powers belong only to the State which created the corporation."   The case of *Wilkins* v. *Thorne*, 60 Md. 253, is likewise in point.   Thorne filed a bill against Wilkins alleging that Thorne was a stockholder in the North State Copper and Gold Mining Company ; that Wilkins and others fraudulently contriving and intending to get possession of the company's property and divide the same amongst themselves, to the exclusion of the lawful owners of the stock, assembled in Baltimore and proceeded to take steps to re-organize the company, intending thereby to cheat and defraud Thorne and the other lawful holders of the stock out of their property by means of certain pretended by-laws, rules and regulations ; that Wilkins and his confederates were in actual possession of the property and franchises of the company and had refused to allow any of the stockholders who had not paid an unlawful assessment levied by him and his confederates, to have any lot, share, recognition or authority in the matter of the corporation. The bill prayed for an injunction to restrain Wilkins and those acting with him from intermeddling with the property, stock or affairs of the company.   The corporation was a foreign corporation.·   This Court, whilst holding that " if this were a Maryland corporation, there could be no question as to the jurisdiction of a Maryland Court over the subject," decided that " such controversies must be determined by the Courts of the State by which the corporation was created ;" because it was " clearly a controversy relating to the *internal management* of the corporation and the validity of the acts of those who claim to be, and indeed are admitted to be *de facto* its· president, directors and stockholders." The relief sought was accordingly denied.

The conclusion reached in both of these cases was adverse to the Court's jurisdiction, notwithstanding the provision of the statute making a foreign corporation liable to a suit in the Courts of this State by a resident of this State

" on any dealings or transactions," or *for* " *any cause of action;*" and in spite of the fact that in one case the foundation of the proceeding was an alleged, and as the case was presented an admitted, illegal forfeiture of stock ; and in the other an alleged, and by the demurrer a conceded, fraudulent conspiracy to deprive a *bona fide* shareholder of his stock and to exclude him from a vote in the management of the company.   The language of *Sec. 124*, heretofore quoted, is less—or at all events certainly not more—emphatic than that employed in *Secs. 295 and 297 ;* for it makes only *lawful* process served on a non-resident insurance company's agent of the same force and validity as if served on the company within the State.   As process to be lawful, must be process that the tribunal issuing it has authority to issue ; and as a judicial tribunal has no authority to issue process (which is a mandate to its officer commanding him to perform certain services within his official cognizance), unless it be issued in a proceeding which the Court has jurisdiction to entertain, to hear and to decide; it follows that the statute must be interpreted in the same way that *Secs. 295 and 297* were construed—that is, as not intending to confer an extra-territorial jurisdiction, or a jurisdiction over a cause that involves only an inquiry into and the exercise of a control over the internal management of a foreign corporation.

The reasons for thus interpreting these provisions of the Code are conspicuously clear.   There are obvious difficulties that would be encountered if the Courts of one State undertook to adjust the internal affairs of a foreign corporation formed under the laws of a different State and having its *habitat* within the borders of another sovereignty.   The absence of a visitorial power over such a corporation and the absolute inability to enforce a forfeiture of its charter for a violation of the law, or to remove its officers for misconduct, or to punish them for malversations committed in the place of its domicile, are open and apparent obstacles in the Court's pathway, should it assume to exert an extra-

territorial jurisdiction. Besides all this, its lack of the means to do full justice, and its want of the machinery to enforce against the corporation in the place of its existence, any decree it might render in such a proceeding indicate, if they do not demonstrate, that the Legislature never designed to confer a power, the exercise of which would or might be utterly fruitless and vain.

With this limit to the Court's jurisdiction established, it becomes necessary to ascertain what is and what is not a controversy relating solely to the internal management of a corporation. In other words, what acts are so distinctively acts pertaining to the internal management of a foreign corporation as to preclude an inquiry into them by any tribunal other than the Courts of the corporation's domicile. The motives with which the acts are done, and the effect they may have upon others when done, are altogether aside from the inquiry; because, if they strictly appertain to the internal government of the corporation, neither motive nor effect can convert them from what they intrinsically are into what they obviously are not; and, therefore, cannot make them cognizable if otherwise they be not cognizable. An act done with a fraudulent motive is, as an act, precisely identical with the same act done without such a motive, in so far as it relates to this jurisdictional question, because it is the quality or nature of the act, and not the incentive that prompted it, or the effect that it produces, which determines whether it does pertain to the internal management of the corporation or not. In *Field's case, supra,* which has been followed by many other Courts of the country, it was said : " Where the act complained of affects the complainant solely in his capacity as a member of the corporation, whether it be as stockholder, director, president, or other officer, and is the act of the corporation, whether acting in stockholders' meeting or through its agents, the board of directors, then such action is the management of the internal affairs of the corporation, and in case of a foreign corporation, our Courts will not take jurisdiction. Where,

however, the act of the foreign corporation complained of affects the complainant's individual rights only, then our Courts will take jurisdiction." In *Field's case* the controversy arose entirely out of the internal management of the affairs of the company. "It is the complaint of a *stockholder* that he has been deprived of his rights, as a *stockholder*, by the illegal action of the board of directors." In *Thorne's case, supra*, it was the complaint of a stockholder that he was deprived of his right to the stock by the fraudulent conduct of persons claiming to be the directors. In *Madden v. Penn. Electric Light Co.*, 181 Pa. St. 617 ; *S. C.*, 38 L. R. A. 638, it was held that the Court would not, at the suit of a resident stockholder against a foreign corporation set aside unwise, dishonest and useless contracts which depreciated and destroyed the value of the stock, although the visible, tangible property of the corporation, consisting of conduits in streets for electric lighting, was within the State; because the wrong complained of was an act done in the internal management of the corporation. In *Clark v. The Mutual Reserve Fund Life Association*, Court of Appeals, District of Columbia (February 7th, 1899), it was held that this same corporation was not amenable to the process of the Courts of the District, under a bill substantially the same as the one before us, and seeking precisely the relief asked in this proceeding. See, too : 8 *Am. & Eng. Ency. Law*, 378, note 4, and 379, note 1 ; *Rep. Mt. Sit. Mines v. Brown*, 58 Fed. Rep. 645 ; *S. C.*, 24 L. R. A. 776.

We turn now to the allegations of the bill to ascertain whether the acts complained of are, according to the definition in *Field's case*, acts of internal management or not. Laying aside for the moment the question as to whether the certificate of membership by its terms authorizes an increase in the amount of the assessments above three dollars and twenty-five cents per one thousand dollars of insurance and permits the levying of more than the designated bi-monthly ones ; it is obvious, we think, that the whole fabric of the bill with respect to these alleged illegal assessments involves, as

its foundation, the right of a Maryland Court to inquire into the internal management of this New York corporation. The substance of the allegations of the bill, as we have heretofore stated them on this subject, is that these excessive assessments are not only void because not authorized; but because, the condition of the death fund not demanding that they should be laid, they were made with the dishonest and fraudulent purpose of forcing the appellant's policy, and the policies of others similarly situated, to lapse. Now, it is perfectly apparent that no tribunal can possibly decide whether the condition of the death fund required these extra assessments to be levied, until it knows what the condition of the death fund was and what demands there were upon it. And it is equally clear that in order that these factors may be known the whole internal management of the association must be investigated. The disposition made of the money assessed for and payable to the death fund; the validity of claims against that fund; the propriety of expenditures charged against it, and other like inquiries, strictly relating to the internal management and to the proper disbursement of the money which the many thousand members have entrusted to the directors' control, would all have to be solved, before a Court could say that these assessments were unnecessary or fraudulent. No Court could declare them excessive until it knew what sum was not excessive; and no Court could decide what sum was not excessive until it was placed in the full possession of all the facts pertaining to the whole internal conduct of the company. These observations apply also to the charges of the bill in respect to the amount of the reserve fund bonds issued to Condon. It is alleged that a true accounting will show him entitled to bonds for larger amounts. A true accounting can only be had by an examination of all the entries relating to this fund and by correcting errors, if any there are. Obviously this would involve a control of the company's internal affairs by the agency of an injunction issued by a Maryland Court, though that Court possesses no

power to enforce the injunction if its commands were treated with contumely by the corporation. These matters thus complained of do not affect the appellant's individual rights solely; they relate also to the rights and bear upon the liabilities of every other member as an insurer, and whilst in a sense they may, by their consequences, affect him individually as assured, they do not affect him exclusively, but concern, as well, the internal management of the company. His relation to the corporation is, as we have stated, of a two-fold character. He is insurer and insured. It is possible that the same act of the body corporate may affect both of these relations. In that event it could not be said that the act affected a member's *individual* rights *only*. In *Madden's case, supra,* the fraudulent and dishonest contracts complained of impaired the value of the shareholders' stock, and in that regard injured his individual rights; but the wrong imputed arose, not from the violation of a contract with him, but from want of fidelity to duty on the part of the directors in the fiduciary position occupied by them. These acts not only depressed the value of the stock, but they concerned the internal management of the corporation, and, therefore, though causing injury, furnished no ground for a Pennsylvania Court to interfere with the government of a New Jersey corporation.

If the whole of the contract between Condon and the company were before us for construction in a case where we were authorized to construe it, we would be confronted by a provision of the policy which places in the directors' power and discretion, when the death fund is insufficient to meet existing claims by death, to levy an assessment " *at such rates,* according to the age of each member, as may be established by the board of directors." Here, then, by this term of the contract, provision is made for additional assessments beyond the bi-monthly ones previously specified in the certificate. Whether this is the meaning of the contract when all of its parts are brought together we do not, for we cannot, now decide.

From what we have said it is apparent that the second and fifth prayers for relief cannot be granted—we cannot by injunction control the internal management of a corporation which is located beyond the reach of that process. It is equally clear that the fourth prayer for relief must be denied because it asks for the construction of a contract when but part of the contract is before us.  We are called on to interpret the contract as set out in the certificate of membership in connection with the constitution and laws, though the application and the constitution and laws—all forming part of the contract—are not before us.  The constitution and by-laws form part of the agreement of insurance whether mentioned or not, *16 Am. & Eng. Ency. Law, 41, and cases in note 1.*  A construction of the contract as set out in the policy alone, would not be a construction of the contract as contained in the application, the constitution, the by-laws *and* the policy.

There is no averment cognizable by a Maryland Court justifying the appointment of a receiver as asked for in the sixth prayer for relief.  The allegation of insolvency is not sufficient to found such a drastic measure on.  Unless the plaintiff has a standing in Court—unless he presents on the face of his bill a case of which jurisdiction can be taken— a bare allegation of insolvency will not warrant the appointment of a receiver.  If the Court has no jurisdiction over the subject-matter of the proceeding it has no authority to appoint a receiver.

The second prayer for relief is in the alternative.  It asks that the money paid in by Condon during the time he has been a member be restored to him, if the Court should hold that his understanding of the meaning of the policy is not its correct interpretation.  He alleges that he understood the contract to mean one thing, and he claims, if the Court shall find it to import something else, that then there never was any contract at all, because there was no meeting of minds in regard to its terms.  Now, the bill nowhere charges that Condon was induced by fraud, deceit or

misrepresentation to enter into the contract of insurance; nor does he ask to have the policy cancelled on any such ground. His claim is simply that he understood the contract to signify that he was to pay only six assessments *per annum*, each one of which would be for the sum of thirty-two dollars and fifty cents, and no more. He insists that if this is not the limit of his liability he is entitled to have his money refunded. For more than fourteen years the policy has been in his possession. Its provisions were plainly before his eyes. He has given no explanation for not reading them; and although he has had the benefit of an insurance on his life for that period of time, he asks to have all he has paid in refunded him. The sums he paid in were not paid for his use exclusively, nor mainly. They were collected to pay the losses occasioned by the deaths of other members. They were paid in for a specific purpose and were paid by him as an insurer. They were not assets of the corporation. *May on Ins., Sec. 550 A and Note.* The corporation acted in the receipt of them as a collecting agency for the benefit of those persons to whom they were ultimately payable; and there is no pretence in the bill that a single dollar of the sums paid in by Condon has not been disbursed or appropriated precisely in the way and to the uses he expected and intended that it should be. And if his contributions have been expended and appropriated in that way, obviously he has no claim to recover them back, simply because he failed to read, or if he read, failed to understand the provisions of the policy, the constitution and the by-laws. As we have already stated the whole contract is not before us; and even if this were a case in which we were authorized to construe it, we could not interpret it in the absence of material and essential portions of it.

Every right asserted by Condon is a right founded on his membership. Every prayer for relief is for relief sought by a member against the concern of which he is a member, in respect of some matter pertaining to the management

and internal government of the association. Whilst the acts complained of may affect him, they do not affect him alone, and they only affect him in any way because of his membership. If these acts are unwarranted they are certainly not more grave than the forfeiture of Field's stock for the non-payment of an illegal and void assessment. And if the latter gave no ground for the interposition of a Court of Equity, because it was an act of internal management done by a foreign corporation; it is difficult to see how the former can be classed as acts affecting only the individual rights of Condon. In *Fiela's case* an injury was done to him by the misconduct complained of—but the injury was not an injury solely to his individual rights. The act which occasioned the wrong was a corporate act relating to the internal government of the company. Its effect upon him did not deprive it of its character as a corporate act. The results to Condon do not define the nature of the acts which he complains of, or prevent them, because they do him injury, as he alleges, from being acts pertaining to the internal government of a foreign corporation of which he is a member. Were he suing *on* the contract of insurance the situation would be different.

If this were a suit *on* the insurance policy to recover a loss insured against, it would be a case within the jurisdiction of the Courts of Maryland. In such a proceeding it would be incumbent on the Court to construe the policy, and to determine whether it had been forfeited or not ; because it would have the authority to decide whether a recovery could be had. Necessarily, therefore, the validity of any assessment, and the inquiry as to whether an assessment was fraudulent, would be a legitimate inquiry ; because in a suit *on* the policy in Maryland the Courts of this State would not be called on to regulate, by injunction or otherwise, the government of a foreign corporation, but would be required merely to enforce the contract or to award damages for its breach. There is a broad difference between compelling a foreign corporation, at the suit of a member,

126    RICHARDSON vs. B. & D. B. R. CO.

Syllabus.                    [89

to conform its internal conduct to the views of a Maryland Court; and adjudging, at the suit of a beneficiary, that it is liable in damages for a failure to comply with its contract of indemnity. In the one instance the Maryland Court has no jurisdiction; in the other it has.

As we agree with the conclusion reached by the Circuit Court, its decree sustaining the demurrer and dismissing the original and amended bills will be affirmed.

> *Decree affirmed with costs in this Court and in the Court below.*

(Decided March 14th, 1899).