SARAH LIPSMAN, Suing on Behalf of Herself and All Other Policyholders of the GREATER NEW YORK TAXPAYERS MUTUAL INSURANCE ASSOCIATION Who Are Similarly Situated to Her, Plaintiff, v. IGNAZ REICH and Others, Defendants.

Supreme Court, Special Term, New York County, November 29, 1939.

*Israel Beckhardt* [*Edward E. Schwarz* of counsel], for the plaintiff.

*Irving Segal* [*Alexander E. Rosenthal* and *Mordecai Goldberg* of counsel], for the defendants Ignaz Reich and others.

*John J. Bennett, Jr., Attorney-General* [*Oscar S. Mann* of counsel], for the defendant Louis A. Pink, as Superintendent of Insurance of the State of New York.

SCHMUCK, J. By this application the court is called upon to consider the sufficiency of the complaint. The action was instituted by plaintiff, in her own behalf and in behalf of all others similarly situated, to obtain from the defendant Greater New York Mutual Insurance Association, a domestic mutual casualty insurance company, a dividend or return of unabsorbed premiums upon an insurance contract with the association. The directors of the association are made defendants and the Superintendent of Insurance is joined with them because of his supervising control over the payment of dividends by such companies by virtue of section 71-a of the Insurance Law.

The complaint alleges that plaintiff was the holder of a policy of insurance commencing January 14, 1938, and that it was canceled on or about March 1, 1939. The action was started on October 11, 1939, about seven and one-half months after plaintiff ceased to be a policyholder. Despite her lack of present beneficial participation in the company, she bases her right upon section 71-a, subdivision 11, of the Insurance Law, which in its applicable part reads as follows: " The board of directors may from time to time fix and determine the amount to be declared pro rata and paid as a dividend or as a return of unabsorbed premiums upon expiring policies, after retaining such sums as they may deem necessary to meet outstanding policy and other obligations and the maintenance of reserves or surplus as herein provided. Such dividend shall not take effect or be distributed until approved by the Superintendent of Insurance after such investigation as he may deem necessary."

This alleged right of the policyholders under the law is supported by the clause in the policy itself, which reads:

" P. The Assured shall be entitled to an equitable participation in the funds of the Company in excess of the amounts required to pay expenses and all the compensation and other policy obligations incurred, together with the reserve and surplus funds required or permitted by law; such distribution shall be made by the Company only in accordance with the Insurance Law and the Charter, By-laws and Rules and Regulations of the Company."

The complaint further sets forth that as of December 31, 1938, there existed to the credit of all the policyholders a general unallocated surplus of $1,007,569.72, of which $286,000 had been accumu-

lated in 1938. Accordingly, it is maintained that the surplus credited was much greater than required for the safety of the operations of the company. Charging that this came about solely because of excessive charges against the policyholders, plaintiff now constitutes herself champion of all stockholders seeking to obtain for them ratably a refund of the excess premiums charged.

Defendants move to dismiss on three grounds: *First*, that plaintiff has no right to speak in the matter as she is no longer a stockholder; *second*, the allegations of the complaint are insufficient to constitute a cause of action, because there should be no interference with the exercise of vested discretion by the directorate of a stock corporation concerning the declaration of dividends; and *third*, that no proper demand has been made upon the directors for the declaration of the dividend.

The second and third points dealing with the alleged unreviewable discretion of the directors and the absence of demand will be considered first, for the reason that they are fundamentally decisive and peculiarly important to the consideration of the matter herein proposed. Too much stress should not be laid upon the analogy of the ordinary dividend declaration upon corporate stock. This point is especially important here, because the theory of a dividend in a mutual insurance company differs considerably from the one in connection with the ordinary corporate dividend. As was said in *Rhine* v. *New York Life Ins. Co.* (248 App. Div. 120; affd., 273 N. Y. 1), whenever the policyholders in a mutual life insurance company have paid in more than was necessary, they are entitled to a return of such overpayments. The dividends of a mutual life insurance company are accordingly, strictly speaking, not profits as in the case of an ordinary corporation, but really constitute a return to the policyholder of the amount he has been overcharged for his insurance. This doctrine, as applied to life insurance policies, has been made self regulatory by provisions of law. (Insurance Law, § 83.) As explained in *Rhine* v. *New York Life Ins. Co.* (*supra*), the policyholder is charged a premium which supposedly will be sufficient to take care of the cost of furnishing insurance of all prospective death claims, matured endowments, and of a reserve fund for future protection of the policies of its members. The surplus remaining is the divisible amount in which the policyholders are entitled to participate equitably, and is called the dividend. The calculation of the prospective deductions on account of risks assumed has been made almost an exact science by actuarial experience, so that premiums fully cover the prospective deductions for all lawful purposes, and justify the return payment of what is called a " dividend " but what is really an overcharge of premium. How-

ever, in casualty insurance no such comparatively stable factors enter. The mortality table of life insurance has no counterpart in casualty insurance. The number and the severity of accidents is unpredictable. Accordingly unexpected losses may so cripple a company as to make it difficult for it to continue in operation and meet its liabilities. To minimize this unstable factor there is a provision in case of mutual casualty companies, such as the defendant, for assessments upon policyholders, which liability survives for a year after the expiration of the policyholder's contract. The possible needs for assessment, an element absent in life insurance policies, emphasize the importance of conserving the assets, and also stress the necessity of guarding the surplus of the company against ill-advised depletion. In this connection, it is to be noted that the Superintendent of Insurance, a public official, must sanction the authorized distribution of a dividend to make it valid. It is worthy of note that a new chapter has been written in the Insurance Law effective January 1, 1940, whereby the duty of the Superintendent of Insurance has been made more specific by providing that no dividend shall be paid until he has given his written approval resulting from an investigation as to the expediency and safety of such payment. It is because of these provisions of law that the court in a companion motion declined to eliminate the Superintendent of Insurance as a party defendant in this action.

It might seem, from what has been observed, that the complaint is hopelessly insufficient. While the court is of the opinion that no abuse of discretion or violation of plaintiff's rights has been shown in the present pleading, it does not necessarily follow that an action of this character is not maintainable and that the complaint cannot be amended so as to state a cause of action. Because of the absence of precedent and the imperfect analogy with cases involving stock dividends, a more extended discussion is indulged in here on the points raised in the objections to the complaint. It cannot be said that the matter of paying a dividend is solely within the unreviewable discretion of the directors. While the stability and solvency of the mutual company is the prime consideration, the principle of mutuality would be a mere sham, if the directors could, under all circumstances, reserve within the treasury all the accumulation of excess charges. Such procedure, in some cases, would be both unjust to the members and an encouragement to improvidence and arbitrary conduct on the part of the directors in the way of unwise spending and unwise investments. In case of mutual life insurance companies, as has been said, the payment of the so-called dividend is made mandatory and not left to the discretion of the directors. In the case of casualty companies, the situation before

noted is less fixed and both the discretion of the directors and the examination and approval of the Superintendent of Insurance are necessary for the safety of the company. The law has made the Superintendent of Insurance a sort of guardian over the integrity of the assets of the company. There has been a tendency in the development of insurance law and practice to make him also the arbiter in matters affecting payments by policyholders in the way of assessments and in the way of refunds for overcharges of premiums. It is deemed to be the function of the Superintendent of Insurance, as defined by law, not merely to restrain any possible depreciation of funds by way of distribution, but also within the safety zone to protect the policyholders in the redemption of what experience has shown to be overcharges for premiums. Conceivably, therefore, a policyholder might have standing to complain to the Superintendent of the failure of the directors to declare a dividend, where the financial status and considerations of stability in a given case warrant it. This does not mean that the Superintendent could compel the directors in a case which seems proper to him to compel the payment of a dividend. The initiative must, relatively speaking, always rest with the directors. But if a situation should arise where the Superintendent might request the directors to consider the advisability of paying a dividend, and they failed to take any action or disregarded his recommendation, a proper case might be presented for consideration in an action to compel the declaration of a dividend.

These observations are suggested largely by the objection as to the sufficiency of the complaint for failing to allege a demand upon the directors to declare a dividend. The need of such a demand cannot be categorically prescribed even though no dividend would be effective until approved by the Superintendent of Insurance. If a contractual obligation, in addition to the elastic provisions of law, exists, the directors might be required to carry out such duty or else to initiate steps in that direction, although the final approval rested with the Superintendent. A complaint based upon a mere statement of the provision of law as to dividends would presuppose the necessity of a prior demand upon the directors or a showing of the futility of such a demand. The presentation, however, alleges generally not only the Insurance Law, but the charter, by-laws and rules and regulations of the company as a basis for the claim. In the absence of a specific statement from which the court can descry whether these rules and regulations make action on the part of the directors mandatory, as in the case of a mutual life insurance contract, the court is unable to discover whether reasons exist to excuse a previous demand. The complaint should refer specifically to

by-laws, rules and regulations of the company which are in force and make specific the right of the policyholder to dividends.

The complaint cannot be strengthened by statements which are mere conclusions as to the effect of the rules and regulations of the company. This brings up what is perchance the most vital point in the defendant's objections, and that is, the standing of the plaintiff to maintain the action in view of her status as the holder of an expired policy. Here the analogy based upon stock dividends is apt to prove most misleading. It is conceded that a person who is no longer a stockholder of a corporation cannot maintain a representative action to compel the payment of a dividend. He can, however, maintain an action for a dividend declared, to which he was entitled because he was a stockholder of record at the time the declaration was made. When a dividend is paid it comes out of the general surplus of the corporation and not out of any profits of a particular year or profits derived from certain types of policies. The method of paying dividends or refunding possible overpayments to policyholders is in a different position. Since the theory of dividends in such cases is a return of overpayments, a safe course to pursue in order to determine whether such have occurred is to have reference to the particular period in which the policyholder was a member, and to permit him to participate in the surplus created during that period rather than in the surplus generally. In fact, section 323 of the Insurance Law, which becomes effective January 1, 1940, provides that the board of directors may make reasonable classification of policies expiring during a fixed period. Such classification, therefore, should be so made as to make it possible equitably to determine the amount of returnable overpayment for the particular period during which those policies were in force and not on the basis of general surplus.

Defendants as their strongest point urge that the right given to the company to return unabsorbed charges upon "expiring" policies bars the plaintiff from any claim and from any right to maintain the action, because the policy is not an expiring one, but one which has already expired. This distinction is rather finely drawn and cannot be sustained. Action upon the advisability of paying dividends upon policies expiring in a specified period cannot be intelligently fixed in the majority of cases until after the actual expiration of the period. This is so, as a matter of common sense, because the action of the directors must be based, not on expectations, but on actual experience with a given set of policies. Definite action both by the directors and approval by the Superintendent cannot be safely had until the period for which a dividend is sought to be paid is actually past. If no dividend can be declared after

the group of policies has expired, but only while they are still unexpired, the practical effect would be a failure of all payment. By the time the advisability of paying a dividend had been determined, many policyholders by reason of the fact that the life of the policy must generally be renewed annually, would no longer be members of the company. The effect of this would be to make the benefit promised by law entirely illusory. To accept defendant's interpretation would produce this unjust result. Defendants allude to *Huber* v. *Martin* (127 Wis. 412; 105 N. W. 1031) in support of the proposition that existing policyholders alone, in the absence of a charter provision to the contrary, may share in the surplus. That authority and kindred ones deal with the situation in case of dissolution or reorganization of mutual companies. There a participation in the distribution of surplus cannot be claimed by former members. *Huber* v. *Martin* (*supra*) does not deal with claims for distribution of overcharges for premiums for a given period and is, therefore, distinguishable. If it is not unfair for the statute to keep a policyholder to liability for assessment for a year after the expiration of the term of his policy, it is likewise not inequitable to allow him to share in the refund for overpayment within the like period after the expiration of his membership. Thus he should also be permitted to bring a representative action within such time.

While the complaint is deficient in failing to allege demand or in failing to justify the lack of demand by specific reference to other circumstances or to particular provisions of the by-laws and rules and regulations, it is not to be rejected merely because the plaintiff is not a present policyholder.

The motion to dismiss the complaint is granted with leave to amend. Settle order.