FREDERICK KERN et al., Appellants, v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Respondent.

First Department, June 2, 1959.

*David L. Benetar* (*H. H. Nordlinger* and *R. C. Isaacs* with him on the brief; *Nordlinger, Riegelman, Benetar & Charney,* attorneys), for appellants.

*George W. Riley* (*Ralph L. Knisley* with him on the brief; *Oeland & Kuhn,* attorneys), for respondent.

BOTEIN, P. J. Plaintiffs, as trustees of a welfare fund, appeal from an order which set aside a jury verdict of $22,292.34 in their favor and dismissed their complaint, and from the judgment for the defendant entered thereon.

Under a uniform collective bargaining agreement between a union and a group of employers who were members of a trade association, the employers undertook to provide and maintain at their own expense life, accident and sickness, and hospital expense insurance policies covering approximately 6,500 employees. Appellants were designated as trustees and entrusted with funds furnished by the employer contributors, to be used for the acquisition and maintenance of group insurance for the employees.

The trustees procured from defendant, a Massachusetts mutual life insurance company authorized to do business in New York, a one-year group policy commencing December 1, 1946, and subject to annual renewal. Premiums were paid monthly, varying with the fluctuations in the number of employees covered. At the end of each year, there was refunded to the trustees a sum which represented the excess of premiums paid over claims expense and administrative charges, in accordance with a policy provision which read: " Annual Surplus Distribution. On each policy anniversary following a year during which this Policy shall have been in force there shall be distributed hereon such share of a divisible surplus as may be apportioned hereto by the Company."

In 1951 the union demanded of the employers' association that the scope of the coverage be broadened, and the trustees made inquiry to ascertain whether this could be done by defendant. Before a definitive answer was forthcoming the trustees informed defendant, in October, 1951, that the employers had acceded to the union's demand and that expanded coverage would be required. The existing policy was due to expire at the end of November. As the parties were still in the process of negotiating for the broadened coverage, the trustees demanded an interim renewal of the existing policy, with all the same rights, privileges and benefits, on a month-by-month basis. Defendant wrote a letter to plaintiffs on November 16, 1951, summing up the results of a previous discussion. The letter stated: " As the renewal date of your policy is December 1st, and obviously some time will be required to work out the details of a new plan, we offered *to renew on its current terms* on a month by month basis until you and we can reach the necessary decisions to implement the desired future course of action." (Emphasis supplied.)

Accordingly, plaintiffs continued paying premiums for the months of December, 1951 and January, February and March, 1952. Finally, when it appeared defendant was unable to supply the requested coverage, plaintiffs terminated their policy as of March 31, 1952 and obtained the desired insurance elsewhere.

When asked by plaintiffs to return the excess of premiums paid over the cost of the insurance, as had been done in every previous year, defendant refused because the renewed policy had not been in force for an entire year. This lawsuit thereupon ensued. The jury found plaintiffs were entitled to a refund of a proportionate share of the divisible surplus apportioned by defendant. The trial court, however, set aside the verdict on the ground that under section 216 of the Insurance Law, the policy language purporting to comply therewith and the annual resolution of the defendant's board of directors apportioning the surplus, any policy which was terminated prior to its yearly anniversary date could not share in the year-end surplus distribution.

The procedure of mutual life insurance companies with respect to return of premiums to policyholders has been discussed at length in *Penn. Mut. Co.* v. *Lederer* (252 U. S. 523) and cases cited therein. While the annual return to the policyholder of part of the premium he has paid is generally called a " dividend ", it is not analogous to the distribution of profits to stockholders of a profit-making organization. The initial premium paid a mutual insurance company represents the estimated cost of the policy, with an adequate margin for reserves and charges. When these sums have been more definitively ascertained at the end of a year of operations, the company is required by section 216 of the Insurance Law to return the excess premium to the policyholder, in the form of a distribution of " divisible surplus."

" The declaration of a dividend upon a policy reduces *pro tanto* the cost of insurance to the holder of the policy. That is its purpose and effect." (*Rhine* v. *New York Life Ins. Co.,* 273 N. Y. 1, 13; see, also, *Matter of Toeplitz,* 205 Misc. 869, 871; *Wells* v. *Metropolitan Life Ins. Co.,* 171 Misc. 878, affd. 258 App. Div. 986.) The annual distribution of surplus, then, is not akin to a division of profits among stockholders of record at the year's end. It is in actuality an adjustment of the premium — an adjustment contemplated by the parties to the policy — between the amount estimated at the year's beginning to be ample to cover all contingencies and the amount found actually to have been necessary in retrospect (*Scholem* v. *Prudential Ins. Co.,* 172 Misc. 664). After computation of the net premium the

dividend represents return of excess. Such insurance is actually sold on a net cost basis; and prospective purchasers of policies are assured that the actual insurance costs may be considerably less than the stated premium.

Thus, in every previous period, after payment of claims, defendant had retained approximately 10% of the total premium to cover overhead and expenses and had returned the balance to plaintiffs. If it were not required to make any distribution of surplus to plaintiffs for the four-month period of renewals, defendant would retain 25% of the premium paid and no part thereof would be returned to the plaintiffs. If this were so, and had this been brought to the attention of the trustees, it is extremely unlikely that they would have continued negotiating with the defendant when they knew that the coverage they desired was available elsewhere and every extension of time granted to the defendant would cost them additional money.

The policy, which was renewed monthly '' on its current terms '', included the provision that a share of the divisible surplus was to be distributed '' On each policy anniversary following a year during which this Policy shall have been in force ''. Where language in an insurance policy is susceptible of varying interpretations, familiar rules of construction call for the resolution of such ambiguities in a manner most favorable to the insured. The language employed by the insurer here can reasonably be taken to mean that the policy having been in force for a period of four months during the year following the last policy anniversary, plaintiffs would be entitled to a share of the divisible surplus. More to the point, upon the trial the issue was presented squarely to the jury as to whether the parties hereto had agreed that the right to dividend distribution would be retained on the month-to-month renewals of the policy. The jury by its verdict answered in the affirmative.

The term of each renewal policy was one month. The policy language above quoted would appear to permit a sharing of the annual dividend just so long as the policy was in force at some time during the year following the previous policy anniversary date. Insurance companies are bound by the provisions of their policies, just like any other party to a contract, provided they do not offend against an applicable statute.

The distribution of divisible surplus to a policyholder who has paid premiums fully on a policy issued for a term of less than a year is not prohibited by statute. Section 216 of the Insurance Law is designed to protect policyholders against excessive premium charges (*Matter of Toeplitz*, 205 Misc. 869, *supra*). Under

that section (subd. 1), insurance companies are required to "ascertain and distribute annually, and not otherwise" the proportion of any surplus accruing on every participating insurance policy. The company is directed to ascertain surplus earned during the year at the end of each year, and after authorized deductions apportion the remainder equitably to all policies entitled to share therein during the full dividend year. The company is prohibited from deferring the apportionment and distribution of dividends beyond the calendar year following that in which they were earned. After the first policy year, dividends are payable upon the sole condition that the premiums or stipulated payments of the current policy year have been completed.

The statutory requirement that distribution must be made "annually, and not otherwise" does not mean that holders of policies running for a term less than a full year may not share therein. That provision forestalls the chaotic situation which might ensue if dividends were computed or distributed monthly or quarterly, with short-term fluctuations resulting in substantial surpluses in one part of the year and deficits in another, with no possible recoupment of what was paid out to cover the deficits incurred in a later part of the year, or the alternative situation in which dividends would be deferred at the discretion of the company. It was this latter situation which the Legislature had specifically in mind when it amended section 83 of the former Insurance Law, the forerunner of the present section 216, in 1906 (L. 1906, ch. 326).

As stated in the report of the Armstrong Investigating Committee, the evil aimed at was the practice of insurance companies issuing so-called "deferred dividend policies", and the amendment requiring annual distribution of dividends was designed to prohibit this practice (Assembly Doc., 1906, No. 41, pp. 422–430). The Legislature was not concerned and drew no prohibition against the writing of a policy for a period less than a full year. Nor was there any proscription against the distribution of some dividends to policyholders who had, after the first year, paid full premiums on such a short-term policy.

The provision in subdivision 1 of section 216 that dividends shall be paid on all policies "entitled to share therein during the full dividend year" was also evidently designed to protect the policyholder. The dividend year is the 12-month period preceding the distribution resolution. A policy in force during that period and otherwise entitled to participate in the dividend distribution is not thereby excluded even though the policy term

has expired at some point subsequent to the declaration of the dividend.

It is because of the statutory requirement that premium payments for the current year be completed that policyholders whose policies have lapsed or have been cancelled prior to the expiration of their full term have been held not entitled to participate in the distribution of dividends (*Fenster* v. *New York Life Ins. Co.*, 188 Misc. 909, affd. 272 App. Div. 879; *Menin* v. *New York Life Ins. Co.*, 188 Misc. 870). Unlike those situations, however, the plaintiffs here by special agreement with the company entered into successive temporary contracts of insurance (Insurance Law, § 188, subd. 4), each for a term of one month's duration, each contract fully paid for, and each having run its full course to expiration without lapse or cancellation. Such short-term policies may have been unusual, but once made, the return of part of the premium charges paid thereon is not prohibited by the statute.

Plaintiffs waited until December, 1952, the date fixed for annual distribution of dividends, before demanding their proportionate share of the annual surplus. At that time they had completed all payments required of them, in full compliance with the statute.

Hence, defendant's board of directors, charged with the duty of apportioning and distributing surplus to holders of all participating policies, and enjoined by section 209 from discriminating against policyholders in classes similarly situated, was under an obligation in its annual distribution resolution to make provision for a dividend return to plaintiffs-appellants. Otherwise, the net premiums paid by them would far exceed the monthly premiums paid by others with similar claims experience for comparable group coverage.

Concededly, the resolution which the directors adopted for the distribution of surplus funds upon group, life, accident and sickness and hospital expense policies covered only policies on which premiums had been paid to their anniversaries in 1952; but it is precisely because defendant failed to make provision for crediting plaintiffs with any share of the annual dividends that plaintiffs sue. While the method of apportioning divisible surplus is, within prescribed limits, left to the discretion of the directors (*Buford* v. *Equitable Life Assur. Soc.*, 98 N. Y. S. 152; *Greeff* v. *Equitable Life Assur. Soc.*, 160 N. Y. 19), the directors cannot by the expedient of omitting all provision whatsoever for parties entitled to some share therein preclude them entirely from recovery.

Unlike *Rhine* v. *New York Life Ins. Co.* (273 N. Y. 1, *supra*) and *Birne* v. *Public Service Mut. Cas. Co.* (273 App. Div. 288), this is not a suit in which the directors are charged with abuse of discretion in the manner in which they computed the dividend and to compel them to declare the dividend in some other manner than the formula which they adopted. In such cases the only remedy is a suit in equity on behalf of all others similarly situated. This, however, is an action for breach of contract in which plaintiffs accept the general dividend computations, but sue for their share.

Under the circumstances, the formula for measuring the damages proposed by plaintiffs and adopted by the jury was eminently reasonable. On the assumption that they were entitled to a parity of treatment with all other policyholders in the same class, plaintiffs projected their four-month figures to an annual basis. They applied the formula set forth in the dividend resolution of defendant's directors by multiplying the premiums they had paid for the four monthly renewals by three, deducting the claims figure for the four-month period multiplied by three, then deducting the annual load figure for overhead and expenses set forth in the dividend resolution and finally dividing the resultant sum by three. This came to $22,292.34, out of total premiums paid to the defendant during the renewal periods of $166,303.65. While this involved some degree of hypothesis, as all such projections do, plaintiffs were clearly entitled to some measure of recovery; and in the absence of a specific resolution by the board of directors dealing with the given situation, the formula applied cannot be overturned.

The judgment in favor of the defendant dismissing the complaint should be reversed on the facts and the law, the verdict of the jury reinstated and judgment directed to be entered in favor of the plaintiffs in the amount of $22,292.34, with interest and costs, together with costs of this appeal.

RABIN, M. M. FRANK, McNALLY and STEVENS, JJ., concur.

Judgment unanimously reversed on the facts and on the law, the verdict of the jury in favor of the plaintiffs in the amount of $22,292.34 reinstated and judgment is directed to be entered in favor of the plaintiffs in said amount of $22,292.34, with interest and costs, and that the appellants recover of the respondent the costs of this appeal.