500 A.2d 1066

**James W. SPENCE, et al.**

v.

**MEDICAL MUTUAL LIABILITY INSURANCE SOCIETY OF MARYLAND.**

No. 229, Sept. Term, 1985.

Court of Special Appeals of Maryland.

Dec. 5, 1985.

Raymond S. Smethurst, Jr., and Sally D. Adkins (Adkins, Potts & Smethurst, on brief), Salisbury, for appellants.

David A. Levin (Digges, Wharton & Levin, on brief), Annapolis, for appellee.

Argued before ROSALYN B. BELL, KARWACKI and ROBERT M. BELL, JJ.

ROSALYN B. BELL, Judge.

In this case we decide that former policy holders of a mutual company providing medical malpractice insurance are not entitled to participate in the distribution of a dividend from earned surplus stemming from a year in which they had policies in effect.

Medical Mutual Liability Insurance Society of Maryland was created by the Legislature in 1975, and issued its first policies effective July 1, 1975 to individual physicians and their partnerships, corporations and professional associations. During its first year of operation, Medical Mutual collected $5,057,000 in net premiums. The company also derived its funding from two additional sources: (1) a one-time tax of $300 on physicians licensed in Maryland [1] and (2) an assessment on each policyholder equal to 10% of the insurance premium as a Stabilization Reserve Fund charge.[2]

Eight years after Medical Mutual issued its first policies, the company ascertained its underwriting losses and expenses and determined its investment income for 1975, the first year of operation. Medical Mutual showed an underwriting loss of over $2,000,000 for that year; however, as a result of investment income earned on 1975 premiums and income earned from the Reserve Fund, it projected a surplus of $1,357,000.

Medical Mutual's Board of Directors considered these operating results, and on December 6, 1983 declared that "policyholders of record on [that date] who were also insured by the Society in 1975, are eligible for the first dividend to be awarded by the physician-owned company"

---

**1.** Physicians not licensed in Maryland were charged a $300 "membership fee."

**2.** The purpose of the Stabilization Reserve Fund is to accelerate the building of surplus to protect against adverse consequences from premium deficiencies. At present, the Fund has reserves in excess of $7,000,000.

and that the dividend of $500,000 would be shared by the eligible policyholders in May of the next year.

James W. Spence, M.D., other individual physicians and their professional corporations brought suit in the Circuit Court for Baltimore County against Medical Mutual seeking an adjudication of their right to share in the distribution of the dividend declared in December 1983. They claimed that even though they were not insured under policies issued in 1983, they were entitled to participate in the distribution of the dividend because they were 1975 policyholders.

Spence and the others moved to certify the case as a class action. After a hearing, the court granted the motion and certified the class as being

"[a]ll of those persons, partnerships and professional corporations who were insured by Medical Mutual Liability Insurance Society of Maryland under policies in force in 1975 but who were not insured by Medical Mutual Liability Insurance Society of Maryland under policies in force on December 6, 1983 and therefore were not designated to share in the $500,000 dividend declared by the Board of Directors of Medical Mutual Liability Insurance Society of Maryland on December 6, 1983."

Both sides moved for summary judgment. The court granted Medical Mutual's motion, and entered judgment in its favor. Spence and the others then noted this appeal. They present these questions:

"1. Did Medical Mutual's refund of 1975 premiums as a dividend from surplus to only a segment of the policyholders holding a single class of participating mutual insurance discriminate against those policyholders excluded where the policy of insurance neither provides for any distinction nor makes any reference to a bylaw provision asserted as the basis of the distinction?

"2. Are appellants, as members of the same policyholder class, entitled to a refund on their 1975 premiums pro rata to that already paid by Medical Mutual to the other policyholders of the class?

"3. Are partnerships and professional corporations who paid premiums and who are named insured in the policies of insurance entitled to participate ratably with individual policyholders in the distribution of surplus where the policy itself makes no distinction?"

Before exploring these issues, a brief description of the origin of Medical Mutual will prove helpful.

## Origin of Medical Mutual

During the mid-1970's there was increasing public awareness of what came to be known as the "medical malpractice crisis." Between 1975 and 1977 almost every State Legislature enacted one or more measures addressing medical malpractice. Abraham, *Medical Malpractice Reform: A Preliminary Analysis,* 36 Md.L.Rev. 489 (1977). One aspect of this crisis became particularly acute in Maryland, when in 1975, the major insurer ceased writing medical malpractice insurance here because it had been refused an additional rate increase. *Attorney General v. Johnson,* 282 Md. 274, 280, 385 A.2d 57 (1978).

One of the ways the Maryland Legislature responded to this exigency was by creating Medical Mutual Liability Insurance Society of Maryland. *See* Md.Code Ann., Art. 48A, § 550 (1957, 1979 Repl.Vol., 1985 Cum.Supp.)[3]. The purpose of Medical Mutual, as provided in the enabling legislation, is to

"provide for the payment of indemnities to persons suffering injury arising out of the rendering of or the failure to render professional services by physicians and to provide means whereby physicians may obtain insurance against liability for injury due to the rendering of or

---

**3.** Originally enacted as Act of April 29, 1975, ch. 544, Md.Laws 2605. The original legislation remains substantially unchanged with the exception of two deletions and renumbering not pertinent here. *See* Act of May 17, 1976, ch. 822, § 1, 1976 Md.Laws 2245; Act of May 21, 1985, ch. 129, 1985 Md.Laws 1680.

failure to render any professional service, subject to the limitations and immunities provided in this subtitle."

Act of April 29, 1975, ch. 544, § 1, 1975 Md.Laws 2605.[4]

In 1975, 2400 physicians purchased medical malpractice insurance through Medical Mutual. Three years later, the Society was providing insurance to ninety percent of the State's doctors. *Attorney General v. Johnson*, 282 Md. at 281, 385 A.2d 57. When this controversy arose in 1983, other insurance companies had once again begun to write malpractice insurance in Maryland; hence, about 1300 of the 2400 initial subscribers no longer had current policies in force with Medical Mutual.

It is against this background that we address the questions raised by appellants. Within the first question they include a spate of arguments:

1. Distribution of divisible surplus by Medical Mutual is of a totally different character than payment of a dividend by a stock company;

2. Distribution of divisible surplus declared by Medical Mutual's Board of Directors is governed by the contribution method;

3. The dividend declared by Medical Mutual's Board of Directors: (a) is not governed by the company's by-laws since they were not referred to in the contract of insurance or disseminated to the policyholders; and (b) is not in accordance with the terms of the 1975 policy and the applicable statutes; and

4. By excluding appellants from the distribution of the dividend, Medical Mutual has impermissibly rewritten the 1975 policy and has, in effect, required appellants to pay

---

4. Currently codified at Md.Code Ann., Art. 48A, § 548 (1957, 1979 Repl.Vol., 1985 Cum.Supp.). The 1985 amendment expanded coverage to include "other health care providers" and provided for property and casualty insurance for health care facilities. Act of May 21, 1985, ch. 129, 1985 Md.Laws 1680.

more for identical malpractice coverage than other policy-holders in the same class.

We will examine each of these in turn.

## DOES THE PROPOSED DISTRIBUTION
## UNFAIRLY DISCRIMINATE

### Divisible Surplus of a Mutual Insurer

It is appellants' contention that "[d]istributions of divisible surplus by a mutual insurer are of a totally different character than the payment of dividends by a stock company." In support of this proposition they explain that

"while a dividend from a stock corporation represents profit, a dividend from a mutual insurer represents not a profit but a reduction in the amount of the premium to reflect the difference between the estimated cost and the actual cost of providing insurance."

Additionally, they state that

"[w]hile the initial premium paid by the policyholder usually represents a somewhat inflated estimate of the cost of the policy, it is contemplated that, when such cost is actually ascertained, the company will refund to its policyholders the excess premium, that is, the amount in excess of the company's actual cost."

While we agree that the distribution of divisible surplus by a mutual insurer differs from the payment of a dividend by a stock company, that is not the issue before us. The issue we must decide is whether the distribution of the contested dividend was in accordance with the issued policy, and the by-laws and statutes governing Medical Mutual.

In any event, the divisible surplus in this case did not represent "excess premium." The company experienced a statutory underwriting loss for the 1975 policy year. Medical Mutual earned high investment income on premium investments during that year and in all subsequent years. As a result, the company showed a profit in 1975, and was able to declare the dividend in question.

418

## The Contribution Method

Appellants next assert that the distribution of divisible surplus by Medical Mutual is governed by the contribution method. They claim that

"[a]mong mutual insurance companies, the recognized industry standard for allocating divisible surplus among policyholders holding participating policies is by the 'contribution' method, whereby each policyholder is entitled to such portion of the divisible surplus as has been contributed thereto by his premiums."

Appellants misconstrue the purpose of the contribution method. It is not utilized to ascertain who is entitled to participate in the distribution of divisible surplus; instead, it is a method of calculating the pro rata shares of those already deemed entitled to participate in the company's surplus. *Miller v. New York Life Insurance Co.*, 179 Ky. 246, 200 S.W. 482, 486 (1918); *Rhine v. New York Life Insurance Co.*, 248 A.D. 120, 289 N.Y.S. 117, *aff'd.* 273 N.Y. 1, 6 N.E.2d 74 (1936). Furthermore, the contribution method is based upon an "intricate mathematical formula" that relates solely to the life insurance industry, *Rhine v. New York Life Insurance Co.*, 289 N.Y.S. at 124–25, and hence is not applicable here.

Appellants further maintain that under the principles inherent in the concept of contribution "policyholders *must* be included in any distribution arising from a year in which their premiums contributed to the surplus, whether or not they hold current policies in the year the distribution is declared." In support of this proposition, we are referred to life insurance cases from other jurisdictions. In view of the law in this jurisdiction which we will discuss, *infra*, these cases are inapposite.[5]

---

5. *Carlton v. The Southern Mutual Insurance Co.*, 72 Ga. 371 (1884) (former policyholders entitlement to share in distribution of dividend stemmed from provision in company's charter); *Smith v. Hunterdon Co. Mut. Fire Ins. Co.*, 4 A. 652 (N.J.1886) (former policyholders entitled to share in dividend based upon general equitable principles);

### The Policy, By-laws and Applicable Statutes

To determine whether appellants are entitled to participate in the distribution of the contested dividend, we must construe the insurance policy in accordance with Medical Mutual's charter, its by-laws and the applicable statutes. 13A Appleman, *Insurance Law and Practice* § 7582 (1976).

### —The Policy—

It is undisputed that appellants were policyholders and insureds in 1975. A policyholder is "[t]he person who owns the policy of insurance whether he is the insured or not." Black's Law Dictionary 1041 (rev. 5th ed. 1979). An insured is "[t]he person who obtains or is otherwise covered by insurance...." *Id.* at 726.

Appellants contend that since they were policyholders in 1975, they are entitled to participate in the contested dividend. They argue that their entitlement stems from the following language in their 1975 policies:

> "This Policy is issued upon a Participating basis and the INSURED shall participate, to the extent and upon the Conditions fixed and determined by the Company's BOARD OF DIRECTORS in accordance with the Provisions of Law, in any distribution of dividends so fixed and determined."

They further assert that since Medical Mutual's by-laws neither were referred to in the 1975 policy nor disseminated to the policyholders, the contract of insurance cannot be construed with reference to them.

A mutual insurance company's charter and by-laws form part of the contract of insurance, regardless of whether they are referred to in the policy. *Condon v. Mutual Reserve Fund Life Association*, 89 Md. 99, 42 A. 944 (1899);

---

*Lipsman v. Reich,* 16 N.Y.S.2d 892, 16 N.Y.S.2d 892 (1939) (former policyholder permitted, under New York law, to maintain action to determine whether she is entitled to share in dividend); *Kern v. John Hancock Mutual Life Insurance Co.,* 8 A.D.2d 256, 186 N.Y.S.2d 992 (1959) (policy in effect for four months of policy year entitled policyholder to share in year-end surplus distribution).

*see also The Maccabees v. Lipps,* 182 Md. 190, 34 A.2d 424 (1943); *Supreme Council of the Royal Arcanum v. Brashears,* 89 Md. 624, 43 A. 866 (1899). Furthermore, even though the by-laws may not have been distributed to appellants, they are presumed to have knowledge of them. *See Condon v. Mutual Reserve Fund Life Association, supra.*

We might well agree that appellants are entitled to the dividend were we to interpret the 1975 policy in a vacuum. This we cannot do. As we previously stated, the contract of insurance must be construed in accordance with appellee's charter and by-laws. 13A Appleman, *Insurance Law and Practice, supra.* We turn, then, to an examination of these corporate documents to test whether appellants are entitled to the contested dividend.

### —The Charter and By-laws—

Medical Mutual's charter does not address who is entitled to participate in the distribution of dividends. The by-laws, however, are more instructive. Article VII, Section 3 of the 1975 by-laws provides, in pertinent part, that the Board "shall determine and declare the amount, if any, of premium contributions to be returned to the members as dividends to policyholders." Similarly, appellee's amended by-laws which were adopted prior to the declaration of the disputed dividend, provide "[t]he Board of Directors shall determine the amount, if any, of the premium contributions to be returned to the members as dividends."

According to the 1975 by-laws, one who has a current policy in effect is a member of Medical Mutual. Article II, Section 1 provides that "[m]embership shall continue in effect until the expiration or cancellation date of the policy (or renewal thereof) whichever occurs first." In 1983, this definition was amended to provide that "[m]embers whose policies terminate shall automatically be dropped from membership in the Society." Thus, under appellee's by-laws, it is only members—that is, current policyholders,—who are entitled to participate in the distribution of dividends.

Appellants maintain that these by-law provisions conflict with the express language of the 1975 policy, and that where such inconsistency exists the policy governs. We disagree. When the language of the 1975 policy is construed with reference to the by-laws, it is apparent that they do not conflict with one another. In fact, the by-laws further clarify the nature of entitlement to participate in the distribution of dividends. Let us explain.

The 1975 policy provides that "the Insured shall participate ... in any distribution of dividends so fixed and determined." As we stated previously, an "insured" merely refers to the person who is covered by insurance. Black's Law Dictionary, *supra* at 726. The by-laws further explain that it is not sufficient to have been merely an insured or policyholder to receive dividends, one must have current membership status with Medical Mutual to be entitled to share in the company's divisible surplus.

Appellants respond that they continue to be insured under their 1975 policies. It is true that appellants are still insured for negligent acts which occurred during 1975. They were issued "occurrence" type policies under which coverage is effective "if the negligent or omitted act occurred during the period of the policy, whatever the date of discovery." *Zuckerman v. National Union Fire Insurance Co.*, 100 N.J. 304, 495 A.2d 395, 398 (1985).[6] That does not mean, however, that they are entitled to participate in the dividend.

Appellants take the language of the 1975 policy out of context. The policy specifically states that any distribution of dividends must be "in accordance with the Provisions of Law...." As we will discuss, the distribution of the contested dividend was in accordance with the governing stat-

---

**6.** The other basic type of policy issued by professional liability insurers is the "claims made" policy. In this type of policy, the negligent or omitted act must be discovered and brought to the attention of the insurance company while the policy is in effect for it to be covered. *Zuckerman v. National Union Fire Insurance Co.*, 100 N.J. 304, 495 A.2d 395, 398 (1985).

utes. Thus, the fact that appellants continue to be insured for a limited purpose is not controlling.

## —Applicable Statutes—

██ The parties agree that Md.Code Ann., Art. 48A § 264, (1957, 1979 Repl.Vol.), applies to the case *sub judice.* It is appellants' contention that their exclusion from participation in the contested dividend violated that statute. They claim that they belong to the same class as all other 1975 policyholders and, therefore, are entitled to the dividend under Section 264. Appellees, on the other hand, argue that once appellants did not renew their policies with Medical Mutual, they were no longer part of the same class as those 1975 policyholders who remained current members of the company in 1983.

Section 264 provides, *inter alia,* that

"[a]ny domestic stock or domestic mutual insurer may issue any or all of its policies with or without participation in profits, savings or unabsorbed portions of premiums, may classify policies issued on a participating and nonparticipating basis, and may determine the right to participate and the extent of participation of any class or classes of policies. Any such classification or determination shall be reasonable, and shall not unfairly discriminate as between policyholders within the same such classifications."

This provision requires only that appellee not "unfairly discriminate" between policyholders within the same classification. Appellants were within the same classification in 1975 as all other policyholders who purchased contracts of insurance that year. When the dividend was declared, however, appellants were no longer part of the same class as the 1975 policyholders who continued to have current policies. Thus, Medical Mutual did not discriminate "as between policyholders within the same classification" by excluding them from participation in the contested dividend. We hold that there has been no violation of Section 264.

Appellee further asserts that the dividend in question was distributed in accordance with Md.Code Ann., Art. 48A § 265, *supra.* In oral argument, appellants contended that Section 265 applies only to the distribution of dividends on nonparticipating policies. They concluded that since their policies provided for participation in profits, Section 265 is not applicable to this case.

Section 265 provides in pertinent part that

"[t]he directors of a domestic mutual insurer may from time to time apportion and pay or credit to its members dividends only out of that part of its surplus funds which represents net realized savings and net realized earnings in excess of the surplus required by law to be maintained."

In determining whether Section 265 applies, our task is to ascertain and carry out the legislative intent. *Ryder Truck Lines, Inc. v. Kennedy,* 296 Md. 528, 535, 463 A.2d 850 (1983); *Guardian Life Insurance Co. of America v. Insurance Commissioner,* 293 Md. 629, 446 A.2d 1140 (1982); *Department of Public Safety v. LeVan,* 288 Md. 533, 419 A.2d 1052 (1980); *Police Comm'r. v. Dowling,* 281 Md. 412, 379 A.2d 1007 (1977). In the event, "there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intent of the General Assembly." *Police Comm'r. v. Dowling,* 281 Md. at 418, 379 A.2d 1007; *Vallario v. State Roads Comm'n.,* 290 Md. 2, 6, 426 A.2d 1384 (1981); *Union Trust Co. v. Tyndall,* 290 Md. 102, 105 (1981); *Dorsey v. Beads,* 288 Md. 161, 175–76, 416 A.2d 739 (1980); *Department of Public Safety v. LeVan,* 288 Md. at 545, 419 A.2d 1052.

█ There is no ambiguity in the language of Section 265. Moreover, contrary to appellants' assertion, Section 265, by its terms, does not make any distinction between participating and nonparticipating policies. Thus, we conclude that this provision is not limited in its application solely to nonparticipating policies, and we hold that Section 265 applies.

We note that the language of Section 265 could be construed in favor of either party. The statute, however, must be interpreted in accordance with Medical Mutual's by-laws. 13A Appleman, *Insurance Law and Practice, supra.* In doing so, we conclude that the distribution is consistent with Section 265.

In testing the 1975 contract of insurance against appellee's by-laws and the applicable statutes, we hold that appellee is not required to include appellants as recipients of the contested dividend. Only current policyholders or members are designated to participate in the distribution of dividends by appellee. That designation did not violate the by-laws or applicable statutes.

### Effect of the Distribution
### —Tontine Policy—

Appellants claim that their exclusion from participation in the contested dividend "has the effect of rewriting the policy...." They argue that "Medical Mutual's 1975 policy contains no language by which the insureds agreed, explicitly or implicitly, that any surplus attributable to their policies would be distributed only to those members of the class who happened to have policies in force at the time the distribution was authorized or made." Appellants conclude that by excluding them, the Board of Directors has converted the 1975 policy "into what amounts to a semitontine plan policy." In support of this argument, we are again referred to life insurance cases from other jurisdictions.

█ A tontine insurance plan is one which is utilized in the life insurance industry where, by statute, there is a requirement of annual distribution of dividends. 44 C.J.S. *Insurance* § 114 (1945). Under a tontine plan, "all who contribute agree that, instead of apportioning [the surplus] among them all; it may be apportioned among those who outlive the period of distribution." *Equitable Life Assurance Society v. Winn*, 137 Ky. 641, 126 S.W. 153, 155 (1910); *Miller v. New York Life Insurance Co.*, 200 S.W. at 487.

■ The type of dividend distribution in question may well have some aspects of a tontine policy, but that is of no consequence because the distribution was consistent with the policy, the company's by-laws and the controlling statutes.

#### —Blue Shield v. Ward Machinery Co.—

Appellee has relied upon, and appellant has sought to distinguish our holding in *Blue Shield v. Ward Machinery Co.*, 49 Md.App. 258, 431 A.2d 727 *cert. granted*, 291 Md. 783 (1981), *appeal dismissed per joint motion*, 292 Md. 592, 440 A.2d 386 (1982). In *Ward*, we held that the Commissioner of Insurance did not err in approving Blue Shield's proposed distribution of surplus accumulated during 1979, "to the 1979 subscribers who had contributed to the surplus, provided that they had re-enrolled for 1980." *Id.* at 260. In doing so we reversed the decision of the trial court ordering that all 1979 group subscribers who contributed to the surplus share in the distribution "regardless of whether they had re-enrolled in 1980." *Id.* at 261. Appellee urges that *Ward* mandates that we affirm the order in this case positing that in *Ward* a policyholder could only participate in the proposed dividend if membership continued beyond the base premium payment year. Appellant asserts that *Ward* is not authority for the distribution in the instant case.

The statutory scheme which guided our decision in *Ward* was embodied in Md.Code Ann., Art. 48A § 355(b)(6) (1957, 1979 Repl.Vol., 1980 Cum.Supp.). That statute provided

"[t]hat the corporation shall maintain a minimum reserve equal to at least 3% of the subscription charges earned during the prior calendar year as shown on the annual statement filed in the office of the Commissioner. If the Commissioner determines after a hearing that the reserves are excessive in amount, he may order the corporation to submit a plan for distribution of the excess in a fair and equitable method, or in the event the corporation fails to submit such a plan within 60 days, he

may compile a plan and order the corporation to implement it. Reserves equal to 2 months of the nonprofit health service plan's prior calendar year's claims and operating expenses shall be considered reasonable provided they are in excess of minimum reserve requirements."

Medical Mutual's distribution of a dividend, on the other hand, is governed by Md.Code Ann., Art. 48A §§ 264 & 265, *supra.* Thus, we conclude that even though the result we reached in *Ward* is consistent with our holding in this case, it is not authority for our decision here. While we agree with appellant in this regard, it is of little assistance in view of our earlier conclusions.

### —The Premium—

■ Appellants' final argument with respect to the consequence of denying their participation in the distribution is that "the practical effect ... is to compel appellants, without any economic justification, to pay a higher premium for their 1975 insurance than the other 1100 physicians in their class."

While this may be true, appellants are no longer a part of the same "class" as the 1975 policyholders who hold current policies with Medical Mutual. For the reasons stated previously, they are not entitled to the contested dividend.

### PRO RATA DISTRIBUTION

Appellants urge that once we have established their entitlement to participate in the distribution of the contested dividend, we should then provide the trial court with guidance concerning what portion of it they are to receive. It is their contention that

> "[t]he directors of Medical Mutual knowingly accepted the risk that, if this suit was decided adversely to their position, the distribution of the entire $500,000 to less than the entire class would be improper. It would appear that they have the choice of either (i) paying appellants a refund equal to 16.58 percent of their 1975 premiums, or (ii) paying appellants a refund based on the entire class of

approximately 2400 physicians sharing the $500,000 dividend and requiring the 1100 physicians who are currently in receipt of the $500,000 to remit to the company the amount of their excess refund."

Appellants concede that this question "was neither presented to nor decided by the circuit court," but argue that they "believe and therefore submit that a decision with respect thereto is not only desirable but necessary...."

In light of our prior holding that appellants are not entitled to share in the distribution, we need not reach this question.

### ENTITLEMENT OF CORPORATE POLICY HOLDERS

Finally, appellants submit that since "[c]orporations may, by statute, be members of a mutual insurer," the corporate appellants should also be entitled to share in the distribution of the contested dividend. Again, our decision that none of the appellants are entitled to participate in the distribution renders this issue moot.

JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANTS.