GARWOOD, Circuit Judge,
dissenting:
I respectfully dissent. It is undisputed that Kimberly-Clark’s only relevant Factory Mutual policy expired by its terms on September 30, 2003, that prior to that time Kimberly-Clark had determined not to renew the policy, so informing Factory Mutual in late August 2003, and that Kimberly-Clark never attempted to renew the policy. On October 9, 2003, after the Kimberly-Clark policy had indisputably expired, the Factory Mutual’s Board of Directors declared a some $325 million surplus all of which would be credited to policyholders as of September 30, 2003 as a reduction of the premium payable on the renewal of their policy. As Kimberly-Clark’s policy had already expired, and there was never any attempt to renew it, Kimberly-Clark received nothing by virtue of the October 9, 2003 board action, but nevertheless claims an entitlement to a share of the $325 million surplus.
Kimberly-Clark’s relevant policy expressly states that it is subject to the terms of the Charter of Factory Mutual. Section 5 of the Charter provides that a policyholder of the corporation “shall be a member of the Corporation during the term of its policy, but no longer,” and section 10 of the Charter states that “upon termination of the membership of any member, all his or its right and interest in the surplus, reserves and other assets of the Corporation shall forthwith cease.” There is no evidence that these *553 Charter provisions ever read otherwise at any relevant time, nor has their validity been challenged in this case. For example, in Zinn v. Germantown Farmers’ Mutual, 132 Wis. 86, 111 N.W. 1107 (1907), a mutual insurance company on March 19, 1906 declared a $50,000 surplus to be distributed to members “entitled thereto.” It was held that only those who were policyholders on March 19, 1906— the date the surplus was declared and ordered distributed — -were entitled to participate, specifically excluding, inter alia, those “who had held policies and contributed toward the surplus, but whose policies had lapsed and expired, and who were not policyholders on March 19, 1906.” See also, e.g., Spence v. Medical Mut. Liab. Ins. Soc’y of Maryland, 65 Md.App. 410, 500 A.2d 1066, 1067 (1985) (“former policyholders of a mutual company ... are not entitled to participate in the distribution of a dividend from earned surplus stemming from a year from which they had policies in effect.” (emphasis added)); Russ & Segalla, 3 Couch on Insurance (2005) § 39.40 (“The right to share in surplus may, however, be restricted to current policyholders.”).
This is not to suggest that charter provisions such as those of section 5 and 10 of the Factory Mutual Charter must be included in every mutual insurance company’s charter. A charter which does not include such provisions would likely not thereby be invalid. However, it strains logic well past the breaking point to suggest, as does the majority in its footnote 7, which simply ignores section 10 of the Charter and misreads section 5, that once the choice is made to include such provisions in the charter of a mutual insurance company, its Board of Directors is thereafter free to disregard them.
At no time since September 30, 2003, has Kimberly-Clark been a member of Factory Mutual. Consequently, Kimberly-Clark was entitled to no share of the distribution of surplus provided for in the October 9 Board resolution. The Board had no power to itself amend the Factory Mutual Charter, and did not purport to do so. On October 9, the Factory Mutual Board could have declared a surplus distribution payable to, and only to, all who were members on that date, which would have included nothing for Kimberly-Clark.
The fact that Factory Mutual conditioned receipt of the surplus distribution on policy renewal, providing the distribution be only a credit on the renewal premium, is nothing of which Kimberly-Clark has any right to complain, because it had no right to any distribution of any of the surplus.
Kimberly-Clark was not a member on October 9, 2003, and was entitled to no part of the surplus determined to then exist and then ordered to be distributed, and it has not been a member at any time since September 30, 2003, and thus its rights were not in any way infringed by the Board resolution of October 9, 2003.
I accordingly respectfully dissent.